AYRES and another, Respondents, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*March 5 — March 27, 1888.*

*Railroads: Common carriers: Live-stock: Duty to furnish cars when able: Burden of showing inability: Notice to shipper of inability: Damages.*

1. A railroad company engaged in the business of transporting live-stock and accustomed to furnish suitable cars therefor upon reasonable notice whenever it can do so, and which holds itself out to the public as such carrier for hire upon the terms and conditions prescribed in a special written contract with shippers, is a common carrier of live-stock with such restrictions and limitations of its common-law duties and liabilities as arise from the instincts, habits, propensities. wants, necessities, vices, or locomotion of such animals, under the contracts of carriage.

2. As such common carrier the company is bound to furnish suitable cars for live-stock upon reasonable notice whenever it can do so with reasonable diligence without jeopardizing its other business.

3. The burden of showing that it could not, in a particular instance, with such diligence and without jeopardizing its other business, have furnished cars at the time ordered and upon the notice given, is upon the railroad company.

4. Where a shipper makes application to a railroad company, as such common carrier of live-stock, for cars to be furnished at a time and station named, it is the duty of the company to inform him within a reasonable time if it is unable to furnish such cars; and if it fails to give such notice and induces the shipper to believe that the cars will be in readiness, and, relying upon such conduct of the carrier, the shipper is present with his live-stock at the time and place named, and no cars are there, the company is liable for damages.

5. In an action against a carrier for damages arising from delay in transporting live-stock to market, it appeared that the stock arrived on Friday evening in time for the market on Saturday. *Held*, that there could be no recovery for expense of keeping, shrinkage, or depreciation in value after Saturday.

APPEAL from the Circuit Court for *Sauk* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This case was here on a question of pleading upon a former appeal. 58 Wis. 537. The amended complaint is to the effect that the defendant, being a common carrier engaged in the transportation of live-stock, and accustomed to furnish cars for all live-stock offered, was notified by the plaintiffs, on or about October 13, 1882, to have four such cars for the transportation of cattle, hogs, and sheep at its station La Valle, and three at its station Reedsburg, ready for loading on Tuesday morning, October 17, 1882, for transportation to Chicago; that the defendant neglected and refused to provide such cars at either of said stations for four days, notwithstanding it was able and might reasonably have done so; and also neglected and refused to carry said stock to Chicago with reasonable diligence, so that they arrived there four days later than they otherwise would have done; whereby the plaintiffs suffered loss and damage, by decrease in price and otherwise, $1,700.

The answer, in effect, admitted the defendant's incorporation with the privileges alleged; "that it was at times engaged in the transportation over its roads of live-stock when and if it was able to do so, and was accustomed to furnish suitable cars therefor upon reasonable notice when within its power to do so; and to receive, transport, and deliver such live-stock with reasonable dispatch, but only upon special contracts at the time entered into between the shipper and this defendant, and upon such terms and conditions as should be agreed upon in writing; that one of the

lines of this defendant's railway is located as in said amended complaint stated." The answer also, in effect, alleged that "within a reasonable time, and as soon as it reasonably could, and as soon as it was within its power to do so," after the application of the plaintiffs for such cars, the defendant "forwarded four suitable and empty cars to La Valle," and "three suitable and empty cars to Reedsburg," which cars were severally forwarded with reasonable dispatch, and arrived in due course and as soon as they could with reasonable dispatch be forwarded over its line; that at the times of such respective shipments the plaintiffs entered into an agreement in writing with ⌐ defendant for the transportation of said stock at speci⌐ ates, and in consideration thereof it was agreed that the defendant should not be liable for loss from the delay of trains not caused by the defendant's negligence.

At the close of the trial the jury returned a special verdict to the effect (1) that at the times named the plaintiffs were copartners at Reedsburg, engaged in buying and shipping live-stock to the Chicago market for sale; (2) that at the times stated the defendant was a common carrier, and as such engaged in the transportation of live-stock, and accustomed to furnish cars for and transport all live-stock offered for that purpose; (3) that one of its lines ran from La Valle and Reedsburg to Chicago; (4) that October 13, 1882, the plaintiffs, being fully apprised of the state of the Chicago market for live-stock and prices, proceeded to buy therefor seven car-loads of cattle, hogs, and sheep, four to be loaded at La Valle and three at Reedsburg; (5, 6, 7, 8, 9, 10, 14) that the plaintiffs notified the defendant's agents at the respective stations, October 13, 1882, to have such cars in readiness at said stations respectively, October 17, 1882, and that such notices were reasonable, and such agents promised to order the cars and have them in readiness at the time; (11) that two cars were furnished at Reedsburg,

October 17, 1882, and one October 19, 1882; (12) that the four were furnished at La Valle, October 19, 1882; (13) that the defendant furnished two as soon as it reasonably could, but five it did not; (15) that the plaintiffs received no notice before October 17, 1882, that the cars would not be furnished as ordered; (16, 17, 18) that prior to that time, and with ·the expectation that the cars would be on hand as ordered, the plaintiffs had bought sufficient stock to load said several cars, and had the same at said respective stations on the morning of October 17, 1882; (19) that the defendant, being able to furnish such cars, disregarded its duty as a common carrier of live-stock in not having the same on hand when ordered; (20) that had the cars been so furnished, they would have arrived at Chicago on the morning of October 18, 1882; (21) as it was two arrived there on Thursday, October 19, 1882, A. M., and five on Friday, October 20, 1882, at 5:45 P. M.; (22, 23, 24) that the market value of hogs in Chicago, on Friday, October 20, was $7.36 per hundred, on Saturday, October·21, was $7.11, and on Monday, October 23, $6.81; (25, 26, 27) that the loss on the hogs, by reason of depreciation of the market, was $140.08; that the total damages of the plaintiffs on all the stock were $825.97, made up of the following items, to wit: Taking care of and feeding stock, $50; shrinkage on hogs, cattle, and sheep, $408.35; depreciation in value on hogs and sheep, $172.58; and interest on the above sums until the rendition of the verdict, $195.04.

The defendant thereupon moved for judgment in its favor upon the verdict and record, which was denied. Thereupon the defendant moved to set aside the verdict, and for a new trial, upon the grounds that the verdict is against the weight of the evidence, and for errors of the court in its charge to the jury and in its rulings on the trial, and because the damages were excessive and contrary to the proofs, which motion was denied. Thereupon, and upon the motion of

the plaintiffs, judgment was ordered in their favor on the special verdict for $825.97 damages and costs. From the judgment entered thereon accordingly the defendant appeals.

For the appellant there was a brief by *Jenkins, Winkler & Smith,* and oral argument by *Mr. J. G. Jenkins.* They contended, *inter alia,* that the fact that the railroad company had carried and still offered to carry live-stock for hire for all who desired, on terms as to duties, liabilities, and relations not recognized by the law of common carriers but in some respects variant and in others repugnant thereto, did not make it a common carrier of live-stock. *Cleveland & T. R. Co. v. Perkins,* 17 Mich. 296. Railroad companies become common carriers as to any particular kind of property only so far as they hold themselves out as such. *Oxlade v. N. E. R. Co.* 15 C. B. (N. S.), 68; *Johnson v. Midland R. Co.* 4 Exch. 367; *Bank v. Champlain Transp. Co.* 23 Vt. 186, 206. Railroad companies not being common carriers as to live-stock, and the common-law liability being thus changed, the burden of proof as to where the fault lies rests upon the plaintiff. Rorer on Railroads, 1247, 1248, and note 1; Id. 1261, and note 3; Id. 1399, 1400, and note 1; *Lamb v. C. & A. R. Co.* 46 N. Y. 271; *Perry v. D. S. W. R. Co.* 36 Iowa, 102; *Knight v. N. O., O. & G. W. R. Co.* 15 La. Ann. 105. Statutes like sec. 1798, R. S., do not apply to live-stock. Rorer on Railroads, 1300; *Mich. S. & N. I. R. Co. v. McDonough,* 21 Mich. 165. The company is not liable for shrinkage of the cattle. *Ohio & M. R. Co. v. Dunbar,* 20 Ill. 624, 628.

*G. Stevens,* for the respondents, argued, among other things, that as all the proof on the subject of the defendant's ability to furnish cars was within its own control the burden of proof was on it upon that question. To hold otherwise would be to place all shippers at the mercy of the railroad company, and would be a practical repeal of

sec. 1798, R. S., so far as it relates to this subject. *Great Western R. Co. v. Bacon*, 30 Ill. 347; *Wheat v. State*, 6 Mo. 455; *Lovell v. Payne*, 30 La. Ann. 511; *Geüing v. State*, 1 McCord, 573; *Haskill v. Comm*. 3 B. Mon. 342.

CASSODAY, J. There is no finding of any agreement on the part of the defendant to have the cars in readiness at the stations on Tuesday morning, October 17, 1882. There is no testimony to support such a finding. One of the plaintiffs testified, in effect, that he told the agent that he would want the cars on the morning of the day named; that the agent took down the order, put it on his book, and said, "All right," he would try and get them, but that they were short because they were then using more cars for other purposes; that nothing more was said. It appears in the case that the cars were in fact furnished. It also appears that, as the shipments were made, special written contracts therefor were entered into between the parties, whereby it was, in effect, agreed and understood that the plaintiffs should load, feed, water, and take care of such stock at their own expense and risk, and that they would assume all risk of injury or damage that the animals might do to themselves or each other, or which might arise by delay of trains; that the defendants should not be liable for loss by jumping from the cars or delay of trains not caused by the defendant's negligence. The court, in effect, charged the jury that there was no evidence of any negligence on the part of the defendant causing delay in any train after shipment, and hence that the delay of the two cars admitted to have been furnished in time was not before them for consideration. This relieves the case from all liability on contract. It also narrows the case to the defendant's liability for the delay of two days in furnishing the five cars at the stations named, as ordered by the plaintiffs, and in the absence of any contract to do so.

In *Richardson v. C. & N. W. R. Co.* 61 Wis. 601, 18 Am.
& Eng. R. Cas. 530, it was, in effect, held competent for a
railroad company engaged in the business of transporting
live-stock to exempt itself by express contract "from dam-
age caused wholly or perhaps in part by the instincts, habits,
propensities, wants, necessities, vices, or locomotion of such
animals." And it was then said: "Since the action is not
based upon contract, the plaintiff must recover, if at all,
by reason of the defendant's liability as a common carrier
upon mere notice to furnish cars and a readiness to ship at
the time notified. Did such notice and readiness to ship
create such liability? We have seen that a carrier of live-
stock may, to at least a certain extent, limit its liability.
Whether the defendant was accustomed to so limit its lia-
bility, or to carry all live-stock tendered upon notice, with-
out restriction, does not appear from the record. If it was
accustomed to so limit, and the limitation was legal, it
should at least have been so alleged, together with an offer
to comply with the customary restriction. If it was ac-
customed to carry all live-stock offered upon notice and
tender, and without restriction, then it would be difficult to
see upon what ground it could discriminate against the
plaintiff by refusing to do for him what it was constantly
in the habit of doing for others."

In that case there was a failure to allege any such custom
or holding out on the part of the defendant, or that reason-
able notice had been given to the defendant to furnish suit-
able cars to the person applying therefor, or that the same
was within its power to do so; and hence the demurrer was
sustained. The allegations thus wanting in that case are
present in this complaint. It is, moreover, in effect ad-
mitted that the defendant was at times, when able to do so,
engaged in the transportation of live-stock over its roads,
one line of which runs through the stations in question; that
it was accustomed to furnish suitable cars therefor, upon

reasonable notice, when within its power to do so; and to receive, transport, and deliver such live-stock with reasonable dispatch, but only upon special contracts at the time entered into between the shipper and the defendant, and upon such terms and conditions as should be agreed upon in writing. It is, moreover, manifest that the defendant actually undertook to furnish the cars at the time designated by the plaintiffs; that it succeeded in furnishing two of them on time; that there was a delay of two days in furnishing the other five; and that the plaintiffs were willing to, and did, submit to the terms and conditions of carriage imposed by the defendant by signing the special written contracts mentioned. It must be assumed, also, that such special written contracts were substantially the same as all contracts made by the defendant at that season of the year for the shipment of similar live-stock under similar circumstances. Otherwise the defendant would be justly chargeable with unlawful discrimination; the right to do which the learned counsel for the defendant frankly disclaimed upon the argument.

We are therefore forced to the conclusion that at the time the plaintiffs applied for the cars the defendant was engaged in the business of transporting live-stock over its roads, including the line in question, and that it was accustomed to furnish suitable cars therefor, upon reasonable notice, whenever it was within its power to do so; and that it held itself out to the public generally as such carrier for hire upon such terms and conditions as were prescribed in the written contracts mentioned. These things, in our judgment, made the defendant a common carrier of live-stock, with such restrictions and limitations of its common-law duties and liabilities as arose from the instincts, habits, propensities, wants, necessities, vices, or locomotion of such animals, under the contracts of carriage. This proposition is fairly deducible from what was said in *Richardson v. C. & N. W.*

*R. Co., supra,* and is supported by the logic of numerous cases. *North Penn. R. Co. v. Commercial Bank,* 123 U. S. 727; *Moulton v. St. P., M. & M. R. Co.* 31 Minn. 85, 12 Am. & Eng. R. Cas. 13; *Lindsley v. C., M. & St. P. R. Co.* 36 Minn. 539; *Evans v. F. R. Co.* 111 Mass. 142; *Kimball v. R. & B. R. Co.* 26 Vt. 247, 62 Am. Dec. 567; *Rixford v. Smith,* 52 N. H. 355; *Clarke v. R. & S. R. Co.* 14 N. Y. 570, 67 Am. Dec. 205; *South & N. A. R. Co. v. Henlein,* 52 Ala. 606; *Baker v. L. & N. R. Co.* 10 Lea, 304, 16 Am. & Eng. R. Cas. 149; *Philadelphia, W. & B. R. Co. v. Lehman,* 56 Md. 209; *McFadden v. M. P. R. Co.* 92 Mo. 343; 3 Am. & Eng. Cyclop. Law, pp. 1–10, and cases there cited. This is in harmony with the statement of PARKE, B., in the case cited by counsel for the defendant, that " at common law a carrier is not bound to carry for every person tendering goods of *any* description, *but his obligation is to carry according to his public profession.*" *Johnson v. Midland R. Co.* 4 Exch. 372. Being a common carrier of live-stock for hire, with the restrictions and limitations named, and holding itself out to the public as such, the defendant is bound to furnish suitable cars for such stock, upon reasonable notice, whenever it can do so with reasonable diligence without jeopardizing its other business as such common carrier. *Texas & P. R. Co. v. Nicholson,* 61 Tex. 491; *Chicago & A. R. Co. v. Erickson,* 91 Ill. 613; *Ballentine v. N. M. R. Co.* 40 Mo. 491; *Guinn v. W., St. L. & P. R. Co.* 20 Mo. App. 453.

Whether the defendant could with such diligence so furnish upon the notice given, was necessarily a question of fact to be determined. The plaintiffs, as such shippers, had the right to command the defendant to furnish such cars. But they had no right to insist upon or expect compliance, except upon giving reasonable notice of the time when they would be required. To be reasonable, such notice must have been sufficient to enable the defendant, with reason-

able diligence under the circumstances then existing, to furnish the cars without interfering with previous orders from other shippers at the same station, or jeopardizing its business on other portions of its road. It must be remembered that the defendant has many lines of railroad scattered through several different states. Along each and all of these different lines it has stations of more or less importance. The company owes the same duty to shippers at any one station as it does to the shippers at any other station of the same business importance. The rights of all shippers applying for such cars under the same circumstances are necessarily equal. No one station, much less any one shipper, has the right to command the entire resources of the company to the exclusion or prejudice of other stations and other shippers. Most of such suitable cars must necessarily be scattered along and upon such different lines of railroad, loaded or unloaded. Many will necessarily be at the larger centers of trade. The conditions of the market are not always the same, but are liable to fluctuations, and may be such as to create a great demand for such cars upon one or more of such lines, and very little upon others. Such cars should be distributed along the different lines of road, and the several stations on each, as near as may be in proportion to the ordinary business requirements at the time, in order that shipments may be made with reasonable celerity. The requirement of such fair and general distribution and uniform vigilance is not only mutually beneficial to producers, shippers, carriers, and purchasers, but of business and trade generally. It is the extent of such business ordinarily done on a particular line, or at a particular station, which properly measures the carrier's obligation to furnish such transportation. But it is not the duty of such carrier to discriminate in favor of the business of one station to the prejudice and injury of the business of another station of the same importance.

These views are in harmony with the adjudications last cited.

The important question is whether the burden was upon the plaintiffs to prove that the defendant might, with such reasonable diligence and without thus jeopardizing its other business, have furnished such cars at the time ordered and upon the notice given; or whether such burden was upon the defendant to prove its inability to do so.   We find no direct adjudication upon the question.   Ordinarily, a plaintiff alleging a fact has the burden of proving it.   This rule has been applied by this court, even where the complaint alleges a negative, if it is susceptible of proof by the plaintiff.  *Hepler v. State*, 58 Wis. 46.   But it has been held otherwise where the only proof is peculiarly within the control of the defendant.  *Mecklem v. Blake*, 16 Wis. 102; *Beckmann v. Henn*, 17 Wis. 412; *Noonan v. Ilsley*, 21 Wis. 144; *Great Western R. Co. v. Bacon*, 30 Ill. 352; *Brown v. Brown*, 30 La. Ann. 511.   Here it may have been possible for the plaintiffs to have proved that there were at the times and stations named, or in the vicinity, empty cars, or cars which had reached their destination and might have been emptied with reasonable diligence, but they could not know or prove, except by agents of the defendant, that any of such cars were not subject to prior orders or superior obligations.   The ability of the defendant to so furnish with ordinary diligence upon the notice given, upon the principles stated was, as we think, peculiarly within the knowledge of the defendant and its agents, and hence the burden was upon it to prove its inability to do so.   Where a shipper applies to the proper agency of a railroad company engaged in the business of such common carrier of live-stock for such cars to be furnished at a time and station named, it becomes the duty of the company to inform the shipper within a reasonable time, if practicable, whether it is unable to so furnish, and if it fails to give such notice, and has in-

duced the shipper to believe that the cars will be in readiness at the time and place named, and the shipper, relying upon such conduct of the carrier, is present with his live-stock at the time and place named, and finds no cars, there would seem to be no good reason why the company should not respond in damages. Of course, these observations do not involve the question whether a railroad company may not refrain from engaging in such business as a common carrier; nor whether, having so engaged, it may not discontinue the same.

The court very properly charged the jury, in effect, that if all the cars had been furnished on time, as the two were, it was reasonable to presume, in the absence of any proof of actionabe negligence on the part of the defendant, that they would have reached Chicago at the same time the two did — to wit, Thursday, October 19, 1882, A. M., whereas they did not arrive until Friday evening. This was in time, however, for the market in Chicago on Saturday, October 21, 1882. This necessarily limited the recovery to the expense of keeping, the shrinkage, and depreciation in value from Thursday until Saturday. *Chicago & A. R. Co. v. Erickson*, 91 Ill. 613. The trial court, however, refused to so limit the recovery, but left the jury at liberty to include such damages down to Monday, October 23, 1882. For this manifest error, and because there seems to have been a mistrial in some other respects, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.

*By the Court.*— Ordered accordingly.

See note to this case in 37 N. W. Rep. 432.— REP.