AYRES and another, Respondents, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*November 8 — December 3, 1889.*

*Railroads: Common carriers: Delay in furnishing cars to transport live-stock: Measure of damages: Evidence: Value: Ability of company to furnish cars.*

1. In an action against a carrier for damages arising from delay in transporting live-stock to market, where it appears that the stock should have arrived in time for the market on Thursday, but did

not arrive until Friday evening, and that there was no market for it and it could not be sold on Saturday, the plaintiffs may recover the shrinkage and depreciation in value, and the expense of keeping the stock, from Thursday until the following Monday. But if the stock could have been sold on Monday there can be no recovery for such depreciation or expense of keeping beyond that day.

2. The price for which the stock was sold is not conclusive, evidence of its value at the time of sale.

3. The presumption that a railroad company was able to furnish cars for transporting live-stock, as promised, at a certain time and place, can be overcome only by the evidence of some person who had knowledge of the general resources of the company in that respect at the time in question. The testimony of a station-agent and of a train despatcher, who were not shown to have any such knowledge, is held to have been properly rejected.

APPEAL from the Circuit Court for *Sauk* County.

Action to recover damages on account of the defendant's delay in furnishing cars for the transportation of live-stock. The facts as found by the special verdict were substantially the same as those stated in the first nineteen findings of the verdict on the former trial (71 Wis. 374–5). The jury also found (20) that the two car-loads of hogs last shipped arrived in Chicago on Friday, October 20, 1882, at 5:45 o'clock P. M.; and (21) assessed the plaintiffs' damages at $871.41, consisting (22) of the following items: Difference in price at which the two car-loads arriving on Friday were actually sold, and which they could have been sold for on Thursday, $512.73; feed at La Valle, $75.00; cost of keeping in Chicago, $32; interest for five years and eleven months, $251.68. A motion for a new trial was denied, and from the judgment entered on the verdict in favor of the plaintiffs the defendant appeals. Other facts are stated in the opinion.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas.*

*G. Stevens*, for the respondents.

TAYLOR, J. This is the third appearance of this case in this court. It first came up on a motion on the part of the defendant to make the complaint more definite and certain, and the case is reported in 58 Wis. 537. It came up again after a trial and judgment in favor of the plaintiff, and is again reported in 71 Wis. 372. On the second appeal, this court reversed the judgment in favor of the plaintiffs, for the reason that a wrong rule for the assessment of damages was adopted on the trial. As the case then stood, it appeared, as it does on the present appeal, that the two carloads of hogs for which the plaintiffs claim to recover damages because of the failure of the railway company to furnish cars for their transportation at the time agreed upon, arrived in the Chicago market on Friday afternoon, not in time to be sold that day, but in time to be put on the market on Saturday, and that if the company had furnished transportation on the day agreed upon they would have arrived in time for the previous Thursday's market. This court then held, upon the evidence produced on that trial, that the plaintiffs' damages were " necessarily limited to the recovery of the expense of keeping, the shrinkage, and depreciation in value from Thursday until Saturday; " and, because the trial court refused so to limit the recovery to the damages which had accrued between Thursday and Saturday, and left the jury at liberty to include such damages down to the next Monday, this court reversed the judgment and ordered a new trial.

The case has been again tried, and a verdict has again been found in favor of the plaintiffs, and the defendant again appeals, and alleges for error that upon the last trial the court not only did not limit the plaintiffs to a recovery for shrinkage, depreciation in value, and expense for keeping from Thursday until Saturday, but allowed them to recover such depreciation and expense of keeping of all the

hogs until Monday, and of a part of them until Tuesday and Wednesday, of the following week.

Upon the evidence in this case, we think the learned circuit judge was justified in submitting the question, as he did, to the jury, whether it was possible for the plaintiffs to make sale of the hogs in the Chicago market on Saturday; and if they found, as we suppose they must have found under the instructions of the court, that the hogs could not be sold on Saturday, then the plaintiffs must necessarily keep them for the Monday's market, and if any further depreciation in value took place between Saturday and Monday, the plaintiffs could recover such further depreciation as damages, as well as the cost of keeping and the shrinkage, if any, up to that date. The evidence upon which the learned judge submitted this question to the jury was, we think, sufficient to sustain the verdict of the jury that no sale of the hogs could have been made on Saturday at any fair price. The evidence shows that Saturday is ordinarily not a good market day, and at this particular time the market was demoralized by a sudden fall in the price of hogs, commencing on Thursday and continuing for several days. The evidence also tends strongly to show that the plaintiffs made all reasonable efforts to sell the hogs on Saturday, and, although they offered them at twenty-five cents per 100 below the quoted market price, they could get no offer for them. The evidence tended strongly to show that on Saturday no hogs were sold except those of the first grade; that the plaintiff's hogs were not first-grade hogs; and that an unusually large number of hogs remained on hand and unsold on Saturday evening. Upon this evidence, we think the jury were justified in finding that there was no market for the hogs in question and that they could not be sold on Saturday. The learned circuit judge instructed the jury that the plaintiff's dam-

ages, if any, must be measured by the market value of the hogs on Saturday, and not on Monday, unless they should find that the market was so demoralized that there was in fact no market value, or any market value at which the hogs could have been sold, on Saturday. The latter part of this instruction was given in several forms, and was excepted to by the defendant. These exceptions, we think, were properly overruled.

No question was submitted to the jury as to whether the hogs could all have been sold on Monday. In fact, the agent of the plaintiffs sold two car-loads of hogs for plaintiffs on that day. Whether the hogs sold on Monday were all hogs that came in the two cars which arrived in Chicago on Friday night, or were the hogs which came in the two cars that arrived on time on Thursday, or whether they were portions of all the four car-loads, does not appear from the evidence. The probability is that they were about equally distributed between all the cars, as they appear to have been the heaviest hogs in the whole lot. Under this state of the evidence, it would seem quite clear that the plaintiffs should have been limited, according to the rule stated on the former appeal, in their recovery of damages to the depreciation in value, or rather the difference in the value of the hogs in the Chicago market on Thursday of the previous week and on Monday, when they could have been sold. Instead of this rule being adopted, the learned circuit judge instructed the jury that if they found that the hogs could not be sold on Saturday, then the measure of the damages would be the depreciation between the time when they should have arrived and the time they were in fact sold. This idea was stated by the learned judge in different ways, and was duly excepted to by the defendant at each time. The evidence shows that the market price for hogs, as well as their actual value, on Tuesday and Wednesday was considerably lower than on Monday. The actual

sales of these hogs made on Monday were for $6.78, on Tuesday, $5.81, and on Wednesday, for $6.48.    The lower sales on Tuesday and Wednesday were in part attributed to the decline in the market, and perhaps in part to the fact that the hogs sold on Monday were heavier, and therefore somewhat more valuable.    To be consistent with our former ruling in this case, we must hold that this instruction was erroneous and gave the jury a wrong rule for estimating the damages, because — *First*, the depreciation should have been limited by the difference in value of the hogs on Thursday and Monday, and not the difference in value at the time they were sold on Tuesday and Wednesday; and, *second*, because the price for which they were in fact sold was not the absolute rule for determining their value on the days they were sold.    It was evidence of their value at the time of sale, but not conclusive evidence.    See 2 Suth. Dam. 374, 376; *Kountz v. Kirkpatrick*, 72 Pa. St. 376, 378; *Muller v. Eno*, 14 N. Y. 597.

The defendant moved to set aside the verdict on the ground, among others, that the damages assessed by the jury were excessive.    We think the verdict should have been set aside for that reason.    By computing the difference in value of the hogs on Thursday, taking the average price on that day as shown by the evidence, and the prices at which the same were in fact sold for, such difference would be $369.50.    Adding to that the value of ten pounds shrinkage on each hog, which is the shrinkage as shown by the evidence, computing the shrinkage at the average value on Thursday, it would make $110.96, which, added to the $369.50, would make $480.46, instead of $512.73, as found by the jury.    This estimate is made upon a supposed value of the grade of hogs of the plaintiffs on Thursday of $7.66, which, upon all the evidence, seems to us to be the very highest estimate that could reasonably be put upon them on that day.    While this overestimate of the depreciation

Ayres and another vs. The Chicago & Northwestern R. Co.

in value by the jury, upon the theory of the case adopted by the trial judge, might not in itself be a sufficient reason for a reversal of the judgment, it shows that in estimating the damages the jury went to the extreme limit in favor of the plaintiffs, upon the theory of the case as submitted to them by the trial judge, so that it cannot be fairly contended that the wrong theory of the case, upon which the jury assessed the damages, was not injurious to the rights of the defendant.

It was also contended by the learned counsel for the defendant that the trial judge erred in rejecting certain testimony offered by the defendant, which, it is insisted, was competent upon the question of the ability of the company to furnish the cars at the time they were promised to be furnished. The proposition of the defendant was to show, by the station agent where the cars were to be furnished and by the train dispatcher of the division in which such station was situated, that the cars of the company were so situated and employed at the time that by the use of reasonable efforts on its part it could not furnish the cars at the time and place agreed upon. The learned circuit judge permitted the train dispatcher to give evidence tending to show that there were no cars in his division which could be furnished, but excluded his testimony as to the ability of the company to furnish the cars from other places. The following questions were put to the station agent: "What is the fact in respect to the ability of the company that fall to furnish stock-cars?" "State whether or not there was any scarcity of stock-cars at that time on the road." These questions were objected to by the plaintiffs, and the witness was not permitted to answer. The learned circuit judge rejected the offered evidence on the ground that it was not shown that the witness had any knowledge on the subject. Similar questions were propounded to the train dispatcher of the division in which La Valle is situated, and

were excluded for the same reason. We think these questions were properly excluded. Neither the agent at La Valle nor the train dispatcher of the division could have any knowledge of the ability of the company to furnish the cars required, except such as they must have obtained from the general officers of the company; and their evidence would be merely opinions, or evidence of what such general officers had told them, and therefore incompetent as mere hearsay. The train dispatcher was also asked " whether he was able at that time to obtain stock-cars enough for use upon his division to supply the demand." This question was objected to and excluded for the reasons above stated; but he was permitted to state that " there were not, within his division or elsewhere within his control, stock-cars enough to supply the demand on the days they were ordered." This, we think, covered all the ground the witness was competent to testify in relation to. This witness was also asked the following question: " State whether or not cars were furnished, whenever the company had them on this division, as ordered." This was also objected to and excluded for the same reason that the other questions were rejected. The presumption being in favor of the ability of the company to furnish the cars as promised, this presumption could only be overcome by the evidence of some person who had knowledge of the general resources of the company at the time in question. Neither of the witnesses to whom the questions above quoted were propounded were shown to have any such knowledge. Their evidence upon this subject was therefore properly rejected.

The only reason we find in the record for reversing the judgment is that the court directed the jury to assess the damages of the plaintiffs upon the difference in value of the hogs on Thursday and the price at which the hogs were in fact sold. The rule should have been the differ-

ence in value between Thursday and Monday, in case the jury found there was no market at which they could have been sold on Saturday.

While this court can do nothing but reverse the judgment and order a new trial, we respectfully suggest that as all the important legal questions in the case have been settled, as well as the facts necessary to make a satisfactory computation of the amount of damages the plaintiffs ought to recover under the rules laid down by this court, the parties should agree that the plaintiffs take judgment for the damages they are entitled to recover, upon the proofs in the case and the rule stated, without the expense and trouble of a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.