# THE DI GIORGIO IMPORTING AND STEAMSHIP CO. *vs.* PENNSYLVANIA RAILROAD CO.

*Carriers—Failure to Supply Cars for a Shipment—Action of Tort— Notice as to Cars Needed Must be Reasonable and Definite—Questions of Law and Fact—Connection Between Bills of Exception— Evidence.*

When a shipper notifies a common carrier such as a railway company that he desires a certain number of cars for a shipment at a designated time and place, and the carrier accepts the notice but does not expressly promise to furnish the cars, then in an action to recover damages for a loss occasioned by the carrier's failure to supply the cars the shipper cannot recover as for a breach of contract by the carrier, but only in tort for defendant's failure to perform its duty as a common carrier.

The first bill of exception contained the testimony in the case. The second bill began thus: "The testimony upon the part of the plaintiff being closed, the defendant offered the following prayer." *Held*, that the first bill of exception is sufficiently referred to and it may be considered in determining the question raised by the second bill.

A railway company which by usage holds itself out as ready to carry perishable freight in ventilated cars, and to send such cars to the shippers' wharf to receive the same, is entitled to have definite and reasonable notice of the time when such cars will be required and of the number needed.

If the carrier is unable to furnish the cars demanded by such notice, it must advise the shipper of the inability.

Whether or not the carrier could, by the exercise of reasonable diligence without jeopardizing its other business, furnish the cars required by a definite notice is a question for the jury.

But when the notice given by the shipper is not definite as to the number of cars required for a shipment or as to the day when needed, then the Court may instruct the jury, in an action for failure to supply cars demanded, that the plaintiff is not entitled to recover.

According to the course of dealing between the plaintiff, an importer of bananas and tropical fruit and the defendant railway company, it was customary for the plaintiff to notify the defendant on each Friday of the number of cars that would be needed during the ensuing week. These were refrigerator cars sent by defendant on floats to the plaintiff's vessels at the wharf in Baltimore. On Friday, June 26th, plaintiff sent a requisition for car floats which stated that on Saturday, the 27th, at 10

o'clock, A. M., floats would be required for the cargo of the ship America. The requisition named three other ships—the Bodo, Di Giorgio and the Snyg—but did not mention the day of their arrival, and designated 90 to 100 as the number of cars that would be required for all four ships. It was usual for the plaintiff to designate in his requisition the time when the first float would be needed and the other floats were called for afterwards when required to receive the cargoes of the expected vessels. Sufficient cars were supplied by the defendant in due time to receive the cargoes of the first two steamers mentioned in the said requisition. The Di Giorgio arrived at plaintiff's wharf at 6 A. M. on July 1st, and the Snyg the same day about 2 P. M., both with large cargoes of bananas. At that time the number of cars on floats at the wharf was sufficient only for a part of the shipment. Plaintiff had received notice of the passage of these vessels through the Capes some ten or twelve hours before their arrival at the wharf, but made no demand for cars upon the defendant until about 10 o'clock on July 1st. In the afternoon of that day and the morning of the next day, the defendant furnished cars for the balance of the cargoes, but too late for shipment by the fast freight of July 1st, and owing to the delay and the extremely hot weather a part of the fruit rotted and another part ripened so rapidly that it had to be sold at a loss. In an action to recover damages for the loss, *held*, that the plaintiff's requisition, as above set forth, was not notice except as to the cars required for June 27th, and as to the other cars an additional notice to the defendant was necessary, and since plaintiff had failed to give such notice designating reasonably in advance the time when the other cars would be required he is not entitled to recover.

*Held*, further, that it was not the duty of the defendant to seek information as to the time of the arrival of plaintiff's vessels from the notices obtainable at the Chamber of Commerce.

In an action against a carrier for its failure to furnish cars upon a certain requisition by a shipper, a subsequent written requisition by the same shipper calling for other cars for a different shipment, without any testimony to identify it, is inadmissible in evidence because not proved to have been sent, and also because irrelevant to the issue.

*Decided December 21st, 1906.*

Appeal from Baltimore City Court (WRIGHT, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*James A. Fechtig, Jr.*, and *George A. Finch*, for the appellant.

*Jno. J. Donaldson* and *Shirley Carter*, for the appellee.

PEARCE, J., delivered the opinion of lhe Court.

This is an action brought by the appellant, the Di Giorgio Importing and Steamship Company, a body corporate, against the appellee, the Pennsylvania Railroad Company, a body corporate, for failure to furnish cars for shipment of perishable goods over the lines of the appellee. The appellant was in June, 1903, and still is, engaged in the business of importing into Baltimore tropical fruits, principally bananas, from Jamaica and Cuba. The declaration sets forth that the plaintiff being in possession on June 27th, 1903, of one or more cargoes of bananas imported by it, and being desirous of shipping the same to its customers at various places in the United States, did in accordance with the usual custom, make request upon the said defendant for cars for the shipment of said bananas; that the defendant received and accepted said request, and that the plaintiff relying upon said acceptance, contracted to ship said bananas to its customers at various points; but that defendant failed to furnish said cars, whereby the plaintiff was unable to ship the said bananas, and was obliged to leave them a long time upon the steamers in which they were imported, and that a large part of the same in consequence decayed and were lost to the plaintiff.

The evidence showed that it had been for a number of years, and on June 27th, 1903, still was, the invariable custom of these fruit steamers to dock and discharge their cargoes at Bowly's Wharf in Baltimore; that a portion of each cargo was sold from the ship's wharf side, but that the greater part was loaded from the other side of the steamship into specially constructed ventilated cars brought upon floats to the steamer's side by the appellee and by the Baltimore and Ohio Railroad, the cars of the former being then towed to Canton for shipment over the appellee's lines, and those of the latter to Locust Point for shipment over its lines. It is necssary for the preservation of this fruit and its delivery in marketable condition at distant points, that the utmost expedition should be used in hot weather in transferring it from the steamship to the ventilating cars, and in transporting it, when loaded, to its destina-

tion.  The steamships upon which it is imported are specially constructed for ventilation, and this method of construction, while the ships are in motion, is effective in retarding ripening and preventing decay, but when the steamers are moored these processes are very rapid if the fruit is not promptly transshipped.   This is recognized as fully by the railroad carriers as by the importers, and in consequence, special promptness is the rule of the railroad companies in furnishing cars for this purpose, as well as in establishing and operating fast freight trains.

Henry Brown, in June, 1903, was superintending the loading of bananas on cars at Bowly's Wharf for the Di Giorgio Importing and Steamship Company, and in explaining how the necessary cars were obtained for shipment, testified that the Steamship Company furnished the Pennsylvania and the Baltimore and Ohio Railroads with requisitions each week for the number of cars which they would need for the following week, and that it was the custom to give those requisitions on Friday of one week for the succeeding week, and that sometime in 1903, the Pennsylvania Railroad furnished a form of requisition, which the plaintiff filled out "giving the names of the steamers and the time when we wanted the cars, and stating the number of cars we wanted for the following week," and that these requisitions were sometimes sent through the mail and sometimes carried in person.   There was then introduced in evidence the requisition made by the plaintiff on Friday, June 26th, 1903, for the succeeding week, which is herein transcribed in full, as follows:

Md.]                                Opinion of the Court.

REQUISITION FOR CAR FLOATS.

Baltimore, June 26th, 1903.

Mr. Wallace Malcolm,
    Pennsylvania Railroad Company.

No..................... .................
.....................10.......................

Dear Sir;
    Floats are required at Bowly's Wharf as follows:

| Day and Date Floats wanted | Time wanted | Name of Ship | Number of Floats |
|---|---|---|---|
| Saturday 6–27 | 10 a. m. | America | |
| | | Bodo | |
| | | S. Di Giorgio | Number of cars 90 to 100 |
| | . | Snyg. | |

Time sent out                 Shipper Di Giorgio Imp. & S. S. Co.
11.30 a. m.....................p. m.                                By H. Brown.

No. 10

Baltimore, June 26, 1903.
    Received from the Di Giorgio Imp. & S. S. Co. their requisition for car floats, numbered as above.
    Requisition received at.........a. m.    2.........p. m.
                     Wallace Malcolm,
                     Freight Solicitor.

It being shown by this witness that the date of the requisition, the day and hour when the floats were wanted, the names of the ships to arrive, and the number of cars wanted, the time the requisition was sent out, and the signature, H. Brown, were all in his handwriting, and that the date of its receipt and the signature of the Freight Solicitor was in the handwriting of Wallace Malcolm who then represented the defendant in that capacity. He further explained this requisition by saying: "Saturday, June 27th, what I mean by that, I give them the

date on which I want the first float, and the other floats are to be *subject to call when needed as to the arrival of the steamer.* This requisition was to cover the entire ensuing week." The steamers Bodo and America arrived on June 29th and 30th, and for these, sufficient cars were furnished in proper time. The steamer Di Giorgio arrived at Bowly's Wharf, July 1st, at 6 A. M., and the Snyg the same afternoon between 2 and 3 o'clock, and they were ready to unload the Di Giorgio within half an hour later. She had from 28,000 to 29,000 bunches and it would require from 10 to 12 hours to unload a cargo of that size. Both these cargoes were in good condition, that of the Snyg being a little riper, and the thermometer at 3 P. M. that day stood at 93. They loaded promptly all the cars the defendant had furnished, but these were not enough, and the fruit that was delayed in unloading for want of cars rotted in part, and the rest ripened so rapidly they had to be sold at a loss. From 35 to 40 cars would have been required for the 29,000 bunches of the Di Giorgio, and about 20 cars for the 15,000 or 16,000 bunches of the Snyg, but some of these were to be shipped over the B. & O. R. R. about 15 car loads.

The record shows that on the morning of July 1st defendant had nine cars at Bowly's Wharf which were loaded from the Di Giorgio, and that during that day and on the following morning the defendant furnished 31 cars which were loaded from these two steamers. It also appeared that whenever one of these fruit steamers sailed from Jamaica or Cuba, plaintiff was informed by cable of the time of sailing, and amount of cargo, that the run is usually made in from four to six days, and that plaintiffs were also advised when their steamers passed Cape Henry, when they passed Cove Point coming up the bay, and when they arrived at Quarantine. The record shows that the Di Giorgio and the Snyg were reported when they passed in the Capes, but does not show that they were reported when passing Cove Point. Joseph Di Giorgio testified that the Di Giorgio arrived at Quarantine about half-past three o'clock in the morning of July 1st; that they make arrangements with the doctor at Quarantine so that he can

examine the papers and pass the ship without delay, so that they can commence working on the ship at midnight or any hour she arrives, but there is no evidence in the record that any notice was given by the plaintiff, or any one in his behalf, to the defendant, that either of these vessels had been reported at the Capes or at Quarantine.   All that the record discloses is that about ten o'clock, on the morning of July 1st, after the arrival of the Di Giorgio, a demand was made for cars which were not furnished until late in the day and on the following morning, but this demand is not shown to have included cars for the Snyg.   The earliest demand for cars for this vessel was made, so far as the record discloses, in Mr. Di Giorgio's letter written at 1.30 P. M. July 1st, in which he notifies defendant it will be held liable for damages, and also says "the Snyg will be due in about ten minutes, and we shall hold you alike responsible for this fruit."   The plaintiff admitted that on the following morning they had all the cars they needed, but said these were furnished too late to avoid the loss that they sustained.   Joseph Di Giorgio said that the railroad company was as well posted about the movements of the ships as plaintiff was ; that the telegram went to the Chamber of Commerce, and the railroads made it their business to know every steamer that passed Cape Henry and where it was consigned, because they are after business.   He also testified that he saw Malcolm, the freight solicitor of defendant, about 11 A. M. July 1st, and that Malcolm then knew the Snyg was expected about 2 P. M.   No notice was given by defendant of any inability to furnish the cars for the requisition of June 27th.   We have condensed in the foregoing statement of facts the substance of all the evidence given in the case.

There are but two exceptions in the record, one to the exclusion of testimony, and one to the ruling upon the only prayer offered.

After the requisition which has been mentioned, was offered in evidence, the witness Brown was asked if he made any subsequent requisition about that time ; and he said he supposed he did as it was usual to send them every week, whereupon

the following requisition, without identification or proof of any sort, was offered in evidence, and upon defendant's objection was excluded, and to this action the plaintiff took the first exception.

REQUISITION FOR CAR FLOATS.

Baltimore, July 2nd, 1903.

Mr. Wallace Malcolm,
    Pennsylvania Railroad Company.

No............ ......... ....................
.................... ... II..................... ...

Dear Sir :

    Floats are required at Bowly's Wharf as follows :

| Day and Date Floats wanted | Time wanted | Name of Ship | Number of Floats |
|---|---|---|---|
| Friday 7–3–'03 | 3 p. m. | Avalon | Three |
| | | | Number of cars 24 |

Time sent out                Shipper Di Giorgio Imp. & S. S. Co.
.................... a. m.              7 p. m.        By H. Brown.

No. 11

Baltimore, July 3rd, 1903.

    Received from the Di Giorgio Imp. & S. S. Co. their requisition for car floats, numbered as above.

    Requisition received at 9 a. m...............p. m.

Wallace Malcolm,
Freight Solicitor.

N. B.—Just at present we have no cars on hand but hope to have some by the time your vessel arrives.

W. M.

    This paper did not prove itself, and without the requisite preliminary proof, could not properly have been admitted, but apart from this consideration we are unable to perceive how it could be regarded as relevant in an action founded upon negligence alleged to consist in the failure to supply cars on demand, upon another and distinct requisition of the week preceding, and for the cargoes of other steamers than that named in the requisition offered. There was no error in its exclusion.

At the close of the plaintiff's case the defendant offered the following prayer: "That there is no legally sufficient evidence of any binding contract by which the defendant was to furnish any special number of cars of the kind mentioned in evidence, and place them alongside of the steamers mentioned in this case, at Bowly's Wharf, for the purpose of loading therein the bananas brought by said vessels, within any specified time.

"And inasmuch as there is no evidence that the defendant failed in any duty imposed on it by its calling as a common carrier, the plaintiff is not entitled to recover in this action, under the pleadings, and the verdict must be for the defendant."

This prayer was granted and to that ruling the second exception was taken. It will be observed that the declaration, though alleging that plaintiff made *request* upon defendant for cars for transportation of bananas, and that defendant received *and accepted said request*, yet proceeds to charge that the loss and damage claimed to have been sustained, was due to the *negligence* of the defendant in failing to furnish the cars as requested, and that the plea thereto was the general issue plea in tort, "that it did not commit the wrongs alleged."

Such a declaration in *P., W. & B. R. R.* v. *Constable*, 39 Md. 149, was held to be in tort, and not in contract. The Court quoted with approval from *Burnett* v. *Lynch*, 5 Barn. & Creswell, 589, that "Where from a given state of facts, the law raises a legal obligation to do a particular act, and there is a breach of that obligation, and a consequential damage, there, although *assumpsit* may be maintainable upon a promise implied by law to do the act, still an action on the case founded in tort is the more proper form of action."

The case of *Richardson* v. *Chicago and North Western R. R.*, 61 Wis. 597, is very similar to the case at bar. There the complaint alleged that the defendant, being a common carrier, was notified in advance of plaintiff's need of cars and was informed by its station agent that he should have the cars at the day named, but that they were not furnished *"as agreed,"* whereby plaintiff suffered loss and damage. The

Court said, "Manifestly, there is no special contract here alleged in the complaint. True, it is alleged that the agent was notified, and that he informed the plaintiff that he should have the cars on the day named; but there are no. sufficient allegations to constitute any mutual obligations or binding contract." And the same was held in *Missouri Pac. R. W.* v. *Texas Pac. R. W.,* 31 Fed. Rep. 864. The Court in *Richardson* v. *C. & N. W. R. R., supra,* then added: "Since the action was not based upon contract, the plaintiff must recover, if at all, by reason of defendant's liability as common carrier, upon notice to furnish cars, and a readiness to ship at the time notified." So here, if the plaintiff is to recover, it must be by reason of defendant's liability as a common carrier, and there was therefore no error in the ruling of the Court so far as the first branch of this prayer is concerned.

It is contended by the appellee that inasmuch as the requisition admitted in evidence, is contained *only* in the first bill of exception, and there is no reference in the second bill of exception, to the first, that cannot be considered by the Court in passing upon the prayer, and there is no evidence of demand for any cars, but we do not think this contention can be sustained. This case in that respect is very similar to *B. & O. R. R.* v. *State, use of Foyer,* 30 Md. 54, in which the Court said the objection was more technical than substantial, and also said, "We cannot fail to perceive that the bill of exception for refusal to grant the defendants prayers was second in the course of the trial, and that it was taken after all the evidence had closed, and the terms with which this second exception commences," whereupon, &c., "sufficiently refer to what had preceded it to authorize resort to the first bill of exception to ascertain from the evidence whether the prayers refused were or not abstractions." Here the prayer is preceded by the following words: "The testimony upon the part of the plaintiff being closed, the defendant offered the following prayer." This manifestly refers to the testimony. See also *Ruhl & Sons* v. *Corner,* 63 Md. 190, and *Rowe* v. *B. & O. R. R. Co.,* 82 Md. 505, in illustration of the indisposition of the Court to sustain so technical an objection.

Most of the propositions of law presented in the plaintiff's orderly and excellent brief are well supported by authority.

Thus a railroad company engaged in the business of transporting freight as a common carrier is bound to furnish suitable cars to its customers upon reasonable notice whenever it can do so with reasonable diligence without jeopardizing its other business. 6 *Cyc.*, 372; *Ayres* v. *Chicago & N. W. R. R.*, 71 Wis. 372; *Newport News R. R.* v. *Mereer and Warfield*, 96 Ky. 475, in which last case it is said: "It was the duty of defendant as a common carrier, independent of statutory obligations to provide appliances, when requested for transportation of such goods as it held itself out as ready to carry." This was impliedly decided in *P., W. & B. R. R.* v. *Lehman*, 56 Md. 209, and expressly so held in *Whitehill* v. *B. & O. R. R.*, decided at this term, *ante* p. 295.

The defendant here held itself out as ready to carry this class of perishable freight in such ventilating cars as the trade was accustomed to use, and by long established usage it held itself out as ready to send such cars on floats to Bowly's Wharf and to receive such freight from the ship's side, *upon definite and reasonable notice of the time when such cars would be required, and of the number needed*, and if he has reason to anticipate inability to do so, after receipt of *such notice*, he must advise the shipper in order to excuse himself. 6 *Cyc.*, 444; *Helliwell* v. *Grand Trunk R. W.*, 10 Biss. 170.

Ordinarily, it is true, as contended by the appellant, that in an action for damages for failure to supply cars, the negligence of defendant is for the jury to determine. *Helliwell* v. *Grand Trunk R. R.*, supra, 179; *Ayres* v. *Chicago, supra*, 380. So in *Lehman's case, supra*, 232, where the Court said, "Whether upon the receipt of such notice as was given, the requisite means or equipment could have been provided by reasonable exertion, was a question that should have been submitted to the jury for their determination upon all the proof in the cause." But these were all cases of *definite specific notice of the time* when the equipment was required, and this, it is apprehended, is the only principle upon which the rule can properly rest. In the case at bar the plaintiff was content to

rest upon the requisition offered in evidence. Upon its face, it might be contended that all the floats and cars were required at 10 A. M., June 27th, 1903, but Brown swore that the meaning was, under the established use of that form, that the first float carrying eight cars was wanted June 27th, "and the other floats to be subject *to call*, when needed, as to the arrival of the steamer," and that this was to cover the entire ensuing week. It is admitted that all the cars required for the two steamers which arrived June 29th and 30th were received in due time. There is absolutely no evidence that any *call* was made for cars either for the Di Giorgio or the Snyg until 10 A. M., July 1st, as to the former four hours after her actual arrival, and as to the Snyg not until a few moments before her arrival. It is obvious that the reason for reporting to the plaintiff the time when these steamers passed in the Capes, when they passed Cove Point, and when they arrived at Quarantine, was that timely preparation might be made for unloading and reshipping the cargo, and to enable plaintiff, as part of this preparation, by means of the "call" which Brown said was contemplated by the requisition; to make certain and definite that which the requisition left vague and uncertain. It was in the power of the plaintiff to inform the defendant of the time when these vessels were reported at the points named, and of the expected day and hour of their arrival, and under the provision for the "call" above mentioned it was their duty to do so. But there is no evidence that any call was made or any such notice given until 10 A. M., July 1st. There is no evidence that defendant had notice in fact from the Chamber of Commerce, or from any source, of the approach or expected arrivals of these vessels, and it cannot be held under the circumstances of this case to be their duty, to keep some one on watch at the Chamber of Commerce for that purpose.

As was said in *Ayres* v. *Chicago, supra,* p. 380, "the plaintiff had no reason to insist upon or expect compliance except upon giving reasonable notice of the time when they would be required. It must be remembered that the defendant has many lines of railroad scattered throughout several distant States, and many stations of more or less importance, * * *

no one station, much less any one shipper has the right to command the entire resources of the company to the exclusion or prejudice of other stations and other shippers. Most of such suitable cars must necessarily be scattered along such different lines of railroad, loaded or unloaded."

This defendant could not be expected to hold either at Bowley's Wharf, or at Canton, for a whole week, 100 cars for a single shipper, without knowing upon what day of the week or at what hour of the day a single car might be needed. This requisition was *notice* only as to the requirement of one float and eight cars for June 27th, as to all other floats and cars, a future notice was required, as "to arrival of steamers." It was held, reasonably in *McGreen* v. *Missouri Pac. R. R.*, 109 Mo. 582, that where a railroad is not required by the order for cars, to furnish them at any particular hour, the delivery at any hour of the day is sufficient. In the case before us the record shows that of the 31 cars furnished on the notice given at 10 A. M., July 1st, 21 were supplied during that day, though too late for the fast freight at 1.30, and 10 were supplied next morning. That these 21 were too late for the fast freight, was because of the plaintiff's failure to give notice of the vessels coming in when he received it. The requisition as we have said was not notice except as to the one float and eight cars for June 27th. As to all the others it required independent notice, and the question here is not one of reasonable notice, but of whether there was anything which could be regarded as notice to prepare for the arrival, and we do not think there is any evidence of any such notice as to the two steamers for the injury to whose cargoes this suit is brought. We have no disposition to relax any of the salutary rules of law which are so often required to be enforced in order to hold common carriers to their legal liability, but we can discover no evidence in this case of any failure in any duty imposed upon the defendant in its calling as a common carrier, and there was no error in our judgment in the ruling upon the latter branch of the prayer.

*Judgment affirmed with costs above and below.*