RICHLAND EQUITY SHIPPING ASSOCIATION, Respondent,
vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY
COMPANY, Appellant.

*May 12—June 6, 1922.*

*Carriers: Duty to furnish cars: Impossibility: Duty to notify
shipper: Negligence: Question for jury: Damages: Proxi-
mate cause.*

1. A common carrier is bound to furnish suitable and sufficient
   cars for the use of shippers upon reasonable notice when it
   can do so with reasonable diligence and without jeopardizing
   its other business as such carrier.
2. While ordinarily the question of whether a railroad might, in
   the exercise of diligence, have furnished cars requested by
   a shipper is a jury question, where the evidence detailing the
   conditions which prevented the carrier from furnishing the
   cars was undisputed it must be taken as a verity.
3. In an action against a carrier for failure to furnish a shipper
   requested cars, where the undisputed evidence was that such
   failure was caused by an unusual demand for cars after a
   switchmen's strike which had caused a practical cessation of
   shipments during the period of the strike, a finding of the
   jury that the carrier could, in the exercise of reasonable
   diligence, have furnished such cars without jeopardizing its
   other business, was not warranted.
4. Where a shipper applies to a railroad company for cars to be
   furnished at a time and station named, it is the duty of the
   railroad company to notify the shipper within a reasonable
   time if it cannot furnish the cars at the time and place re-
   quested; but if there is no causal relation between the failure
   of the carrier to give notice of its inability to furnish cars
   to a shipper and the damages sustained, it is immaterial
   whether the notice was given by the carrier.

APPEAL from a judgment of the circuit court for Rich-
land county: S. E. SMALLEY, Circuit Judge. *Reversed.*

The plaintiff is an association composed of several hun-
dred farmers located in Richland county, organized prima-
rily for the purpose of shipping stock. One Mickel acted as
its secretary and manager and maintained offices at Richland

Center.   The members of the association knew the stock-shipping days at Richland Center and brought their stock in on those days to be shipped, without notifying the manager.   By reason of his long experience in acting as general manager of the association Mickel could estimate pretty accurately the amount of stock that would be brought in for shipment upon any given shipment day.   On October 12, 1920, he ordered six cars from the defendant company for shipment of stock from Richland Center on Monday, October 18th.   Another livestock shipper also ordered from five to eight cars for use on the same day.   The company furnished but three cars for the use of both shippers.  Plaintiff was obliged to hold a considerable amount of stock until Wednesday, the next shipping day, to its damage.

This action was brought to recover damages from the defendant company because of its failure to deliver and make available for the use of plaintiff the number of cars required to ship its stock.   The case was tried before a jury and a special verdict was returned by which it was found that the plaintiff gave the defendant reasonable notice of the number of cars desired for October, 1918; that the defendant could, in the exercise of reasonable diligence and without jeopardizing its other business, have furnished plaintiff with the cars requested for said date; that the defendant did not inform the plaintiff that it was unable to furnish such cars within a reasonable time after plaintiff's request therefor; and assessed plaintiff's damages resulting from the failure to deliver said cars at the sum of $431. The defendant appeals from a judgment entered in favor of the plaintiff upon this verdict.

For the appellant there was a brief by *Rodger M. Trump* and *Henry J. Killilea,* both of Milwaukee, and oral argument by *Mr. Trump.*

*O. D. Black* of Richland Center, for the respondent.

OWEN, J.    A common carrier is bound to furnish suitable and sufficient cars for the use of shippers upon reasonable notice when it can do so with reasonable diligence and without jeopardizing its other business as such carrier. *Ayres v. C. & N. W. R. Co.* 71 Wis. 372, at p. 380 (37 N. W. 432); *Di Giorgio Imp. & S. Co. v. Pennsylvania R. Co.* 104 Md. 693, 65 Atl. 425, 8 L. R. A. N. S. 108, and note.    The duty of a railroad company in this respect is thus stated in sec. 2219 of 4 Elliott on Railroads:

"The company must furnish cars sufficient to transport goods, offered in the usual and ordinary course of business, but it is not bound to anticipate and prepare for an unexpected press of business.    It is under an obligation to keep for use such rolling stock as the requirements of ordinary business make necessary, but is not under a duty to keep extra rolling stock to meet extraordinary or unprecedented requirements."

The duty has been stated in much the same language by the federal supreme court. *Pennsylvania R. Co. v. Puritan C. M. Co.* 237 U. S. 121, 35 Sup. Ct. 484; *Pennsylvania R. Co. v. Sonman Shaft C. Co.* 242 U. S. 120, 37 Sup. Ct. 46. It is declared by statute (sec. 1797—10) as follows:

"Every railroad shall, when within its power so to do and upon reasonable notice, furnish suitable cars to any and all persons who may apply therefor for the transportation of any and all kinds of freight in carload lots and shall use reasonable diligence in moving freight and making delivery thereof.

"In case of insufficiency of cars at any time to meet all requirements, such cars as are available shall be distributed among the several applicants therefor in proportion to their respective immediate requirements without discrimination between shippers or competitive or noncompetitive places; provided, preference may be given to shipments of livestock and perishable property."

It was conceded upon the trial that the defendant failed to furnish the number of cars ordered by the plaintiff, but

defendant maintained that it was unable to do so by reason of an unusual demand on the part of the shipping public over its entire system for stock cars during the month of October, 1920. The evidence to sustain this claim on the part of the defendant showed that there was a switchmen's strike not only at Chicago but at all large terminals upon its system during the period from April 1st to the latter part of September, 1920; that during such period office clerks and other employees not skilled in the work of switching were pressed into service, but that owing to such inefficient help it was impossible to handle trains and cars received at the large terminals in the usual manner; and it was impossible to handle the usual and ordinary shipping business of the company. It therefore became necessary to, and the company did, notify shippers of livestock that such stock would be received for shipment only at the owner's risk during the period of the switchmen's strike; that this notice retarded shipments of livestock during the summer months, which resulted in an extraordinary movement of livestock after the close of the strike, and an excessive demand not only upon the defendant company but upon all the railroads of the Northwest for stock cars; that during the month of October, taking the system as a whole, the company was able to respond to but sixty-three per cent. of the demands made upon it for stock cars, while during the same month it responded to sixty-nine per cent. of the similar demands made upon the Prairie du Chien division. The evidence showed that its equipment of stock cars was sufficient to enable it to take care of all of its stock-shipping business during normal times, but that owing to the extraordinary demand for stock cars after the switchmen's strike had ended, resulting from the practical cessation of stock shipments during the summer months, it was unable to supply a greater percentage of the demand than above indicated.

Mr. Mickel, secretary and manager of the plaintiff at Richland Center, testified that there had been a shortage of

stock cars prior to the date in question, but that he had made no complaint of the prior failure of the company to respond to his necessities because he assumed it was beyond the ability of the company to comply therewith.    He contended, however, that on this particular day it was possible for the company to have furnished him with the cars demanded, the evidence to substantiate which is as follows: Lone Rock is located on the Prairie du Chien division between Madison and Prairie du Chien.    Richland Center is on a spur a few miles from Lone Rock.    He was informed by the conductor of the train that runs from Lone Rock to Richland Center that there were sufficient cars on the sidetrack at Lone Rock which could have been taken to Richland Center to meet plaintiff's requirements.    Upon this situation the undisputed evidence of the company shows that on Sunday, the 17th, the demand for stock cars on the Prairie du Chien division for the following week was 147; that there were on hand on such division but sixty; that thirty stock cars arrived at Janesville at noon on the 17th for the Prairie du Chien division; that they left Janesville on the 17th at 6 p. m. and arrived at Madison at 1 a. m. on the 18th and left there at 9 a. m. on the same day.    They were taken out of Janesville and Madison on the first regular train that moved out.    There were on hand at Lone Rock on the 17th but five cars, four of which were taken to Richland Center.    The car left at Lone Rock was loaded from that station on the 18th.    Lone Rock got its next cars on the train that left Madison at 9 a. m. on the 18th, but too late to be sent to Richland Center for plaintiff's use on that day.    Twelve cars were taken from Lone Rock to Richland Center on Tuesday, the 19th.    They could not be shipped out on the 19th, however, because that was not a shipping day from Richland Center.    They could not be and were not shipped out from Richland Center until Wednesday, the 20th.    This was owing to shipping regulations established by the defendant company by and with the

consent of the United States Bureau of Markets and the Car Service Department of the Interstate Commerce Commission. There was no evidence to controvert this proof relating to the conditions and movements of stock cars on the Prairie du Chien division during the time in question.

In passing upon the question whether it was within the power of the company to supply these cars on the 18th, this evidence must be taken as a verity. While ordinarily the question whether a railroad company might in the exercise of diligence have furnished the cars requested is a jury question (*Ayres v. C. & N. W. R. Co.* 71 Wis. 372, 37 N. W. 432; *Di Giorgio Imp. & S. Co. v. Pennsylvania R. Co.* 104 Md. 693, 65 Atl. 425, 8 L. R. A. n. s. 108 and note), it is only a jury question where opposite conclusions may reasonably be drawn from the evidence by different persons. Where the evidence is all one way, this, as any other question, becomes a question for the court. There is no evidence in the record to warrant the finding of the jury that the defendant could, in the exercise of reasonable diligence and without jeopardizing its other business, have furnished plaintiff with the cars requested for October 18, 1920, upon the notice given to the defendant for said cars by the plaintiff.

Where a shipper applies to a railroad company for cars to be furnished at a time and station named, it is undoubtedly the duty of the railroad company to notify the shipper within a reasonable time if it cannot furnish the cars at the time and place requested. *Ayres v. C. & N. W. R. Co.* 71 Wis. 372, 37 N. W. 432. Upon controverted evidence the jury found that the defendant company failed to notify the plaintiff that it would be unable to furnish the cars requested by him. In view of the conditions under which plaintiff was doing business it would seem to be immaterial whether in this instance the company notified the plaintiff that it would be unable to have at Richland Center the number of cars required for the shipment of its live-

stock on Monday, October 18th. According to the testimony of plaintiff's secretary and manager it was unable to ascertain what amount of stock would be brought to Richland Center by the members of the association. He had no means of knowing who would bring in stock or the amount that would be brought in by any individual member of the association. It would not have been practicable or even possible for him to have prevented the bringing in of this stock. Besides, it appears rather satisfactorily from his own testimony that he did not expect that the company would be able to have on hand at Richland Center on that day the total number of cars required. At any rate, it appears that the damage sustained by the plaintiff would have been in no manner diminished if the company had notified plaintiff or its manager of its inability to provide the cars required. There is, therefore, no causal relation between the failure to give the notice and the damages sustained, hence it is immaterial whether the notice was given. We can find no support in the record for the finding of the jury that the company could by the exercise of due diligence have furnished the cars requested without jeopardizing its other business, and the complaint should be dismissed.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment dismissing the plaintiff's complaint.