## No. 506.

## THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* RACER ET AL.

COMMON CARRIER.—*Failure to Transport Live Stock.—Absence of Facilities.— Burden of Proof.—Complaint.*—In an action against a railroad company for a violation of duty as a common carrier of live stock in failing to furnish cars for the transportation of plaintiff's live stock on a certain day, the complaint need not allege that the defendant had room and means of transportation when it was demanded, or that it had a regular train which carried live stock and which passed the station on said day after the stock was tendered for transportation. The burden of proof upon these matters is upon the defendant, as they are peculiarly within the knowledge of the carrier. A common carrier is liable in damages for refusal to carry without reasonable excuse. It is for the carrier to show the excuse.

SAME.—*Answer Showing Reason for Failure to Transport.—Demurrer.*—Where, in such an action, a paragraph of answer was filed alleging, in substance, that the defendant had cars sufficient to transport all live stock ordinarily offered for transportation, but that at the time complained of there was an unusual demand for cars, and all its cars were in use, and on that account the defendant was unable to furnish plaintiff the cars on the day desired, but that it did do so as soon thereafter as it could, having due regard to the rights of other shippers, who had demanded, transportation at or before that time, it was error to sustain a demurrer thereto, as the answer stated a good defence, and the averments therein could not be proved under the general denial, notwithstanding the allegation in the complaint of ability of the defendant to furnish cars, as the shipper was not bound to prove such allegation.

SAME.—*Contract for Transportation of Live Stock.— Validity Unaffected by Non-Ownership of Live Stock at Time of Contract.*—If a shipper's order to a common carrier of live stock for a designated number of cars, to be furnished at a station indicated, on a day mentioned in the future for the transportation is accepted by the carrier, such an agreement would constitute a contract binding on the company to furnish the cars, and upon the shipper to furnish the stock to load them. The validity of the contract is not affected by the fact that the shipper did not own or have the stock when the contract was made.

SAME.—*Failure to Transport Live Stock.—Liability for.—If Unable to Transport, Duty as to Notice.*—Where a shipper applies to an agent for cars to be furnished at a time mentioned, and at a station named, it is the duty of the company to inform the shipper within a reasonable time, if

practicable, if it is unable to furnish the cars; and if it fails to do so, and has induced the shipper to believe that cars will be in readiness, and he, relying on such contract of the carrier, is present with his live stock at the time and place designated, and finds no cars, the company is liable for damages thereby sustained by him.

From the Blackford Circuit Court.

*N. O. Ross* and *G. E. Ross*, for appellant.

*S. W. Cantwell*, *H. Brownlee* and *H. J. Paulus*, for appellees.

BLACK, J.—The complaint of the appellees contained two paragraphs, a demurrer to each of which was overruled.

The first paragraph shows, in substance, that the appellees were engaged in buying, shipping and selling live stock at Millgrove; that the appellant's railroad ran through that place, and connected with other railroads which ran to East Liberty, in Pennsylvania; that the appellant held itself out to the public as a common carrier for hire of personal property, such as merchandise, hogs and cattle, from Millgrove to East Liberty; that it was its duty as such common carrier to furnish cars and transportation for hogs and cattle for hire along its line of railroad when requested so to do; that the appellees, relying upon their right to have such cattle and hogs as they might wish transported duly transported over said railway without delay, purchased, on the 30th of August, 1890, six veal calves, five milch cows, twenty fat cattle, and fifty-five fat hogs, and took them to Millgrove for transportation to East Liberty, and then and there demanded of the appellant means of transportation for said stock, and that it should transport the same over said line of road to East Liberty or to the termination of its route in that direction, the appellees being ready and willing to pay the appellant the usual and customary rates of freight charges for the transportation of the stock; that the appellant, wholly disregarding its duty and obligation, failed and refused to transport said stock or any part thereof, although it was able to do so on said day had it so desired; that, as the appel-

lant well knew, the stock was intended by the appellees for the Monday market at East Liberty, and the appellees desired transportation for the stock in order that they might be able to sell the same on the next Monday at East Liberty, Mondays, as the appellant well knew, being the best market days for such stock at that place; that if the appellant had furnished the transportation on that day, as it should and might have done, the stock would have reached East Liberty in time for said Monday market, but owing to its said failure to transport the stock, the calves became emaciated, reduced in flesh and almost worthless, and the other cattle and the hogs lost in flesh, weight, appearance and value before the appellees were able to market or dispose of them, and they were compelled to dispose of them for three hundred dollars less than they could and would have received for them if the appellant had furnished transportation as it should have done; that owing to said failure to furnish transportation, the appellees were compelled to employ and did employ three hands for three days and nights to watch, feed, water and care for the stock, and the appellees were compelled to remain up night and day for three days and nights, watching and caring for the stock; that their said services were worth thirty dollars, and the said services of said hands were worth thirty dollars; that owing to said failure of the appellant the stock deteriorated in value three hundred dollars from what it would have been worth at East Liberty on the Monday next succeeding August 30th, 1890, until the appellees were able to market and dispose of the same; that the appellees, by reason of said wrongful failure and refusal, were damaged in the sum of, etc.; wherefore, etc.

The second paragraph, after introductory averments like those of the first, proceeded in substance to allege that the appellees, relying upon their right to have such cattle and hogs as they might wish transported duly transported without delay over said line, and also relying upon the promise and agreement of the appellant to furnish cars and trans-

portation for their hogs and cattle hereinafter mentioned, purchased, on the 30th of August, 1890, animals described as in the first paragraph, and took them to Millgrove for transportation to East Liberty; that it required two single-deck stock cars to hold said stock during shipment; that in anticipation of said purchase the appellees, on the 28th of said month, informed the appellant that they would want two single-deck stock cars at Millgrove on the 30th of August, 1890, in which to ship said stock to East Liberty; that thereupon the appellant notified appellees that it would furnish them said cars at said time and place, and would then and there transport said stock to East Liberty; that on the 30th of August, 1890, immediately after appellees had taken the stock to Millgrove for shipment as aforesaid, the appellees demanded of the appellant said cars in which to place the stock, and demanded that the same be transported to East Liberty; that thereupon the appellant then and there duly received all of said stock for shipment to East Liberty, but wholly failed and neglected to transport the same or any part thereof, although the appellees were ready and willing then and there to pay the appellant the usual and customary rates of freight charged by it for the transportation of such stock; that after appellant had so received the stock for shipment it continued to fail and neglect to furnish said cars and transportation until the afternoon of the 1st of September, 1890; that, as the appellant well knew, the stock was intended by the appellees for the next Monday's market at East Liberty, and would then command the highest prices at that market; that owing to the failure of appellant to furnish said cars and transportation at the time it should have furnished the same, the appellees were not able to place said stock on market until the Wednesday next following August 30th, 1890, but if said cars and transportation had been furnished at that date the stock would have reached East Liberty in time for the Monday market on the 1st of September, 1890; that from the time the appellant so received

the stock on the 30th of August until the afternoon of the 1st of September appellees were compelled to and did care for and watch said stock in the stock pens of the appellant at Millgrove, that being the place in which the stock was allowed to remain during that time; that the appellant had no suitable place at Millgrove for feeding, watering or caring for the stock, but appellees cared for the same as best they could. The pleading proceeds to state the services rendered and the expenses incurred in caring for the stock, and the deterioration and damage suffered, etc., in substance as stated in the first paragraph.

It is contended that the first paragraph does not show by allegations of facts that it was the appellant's duty to furnish the transportation when it was demanded. It is intimated that it should have been alleged that the appellant had room and means of transportation when it was demanded, and that the statement, " although it was able to do so on said day had it so desired," is not an allegation of an issuable fact, but is a mere recital or a conclusion of the pleader.

It is also contended that it should have been alleged that the appellant had a regular train which carried live stock and which passed Millgrove on the 30th of August after the stock was tendered for transportation, and which could have carried it toward its destination.

We are not disposed to admit the objections urged against this paragraph by appellant. The appellees do not in this paragraph set up any contract or promise, but rely upon a violation of a duty of the appellant as a common carrier of live stock. It is the duty of a common carrier, in the absence of special agreement, where goods have been properly proffered for carriage, to receive them and transport them within a reasonable time and in the order in which they were received. It must act impartially toward shippers, and can not be required to give preference to one over

another, or to carry freight except in the order of priority in which it is presented for transportation.

The ability or want of ability of a railroad company to furnish cars and transportation when it is ordered by a shipper, without undue interference with its business and without disregard of its obligation to treat shippers impartially, and without the use of means of transportation already subject to orders or engagements, must be regarded as being peculiarly within the knowledge of the officers and agents of the company. To show that, with reasonable diligence, the company could not furnish the means of transportation when it was ordered or at the time the company was notified to have it ready, without undue interference with its business or duty, must be easier for the company than to show the contrary would be for the shipper. Logically the burden of proof upon this question should be upon the company. *Ayres* v. *Chicago, etc., R. W. Co.*, 71 Wis. 372 (5 Am. St. R. 226.)

What the shipper can not be required to prove he ought not to be obliged to allege.

In *Chicago, etc., R. R Co.* v. *Thrapp*, 5 Ill. App. 502, it was held that where a common carrier receives goods with knowledge that it is expected that they will be delivered by a certain time, it assumes the liability of delivering them in time, or in case of failure, of *showing* that it used every reasonable effort to make the delivery.

A common carrier is liable in damages for refusal to carry without reasonable excuse. It is for the carrier to show the excuse.

The first paragraph, instead of being bad for want of the allegations suggested by counsel, did not need to contain any averment respecting the appellant's ability. See the complaint in *Pittsburgh, etc., R. W. Co.* v. *Morton*, 61 Ind. 539.

It is contended that to make the second paragraph of complaint good it should have shown by proper averments that

the appellant had sufficient facilities for transporting the stock.

If the want of proper facilities would have relieved the appellant from responsibility for the failure alleged in this paragraph, it was matter of defence.

There was an answer in five paragraphs, the first being the general denial. A demurrer to each paragraph, except the first, was sustained.

The second paragraph of answer was addressed to the first paragraph of complaint. It was alleged, in substance, that at the time complained of the appellant owned and operated a line of railroad six hundred and forty miles in length, along which were seventy points from which live stock were shipped over said railroad, many of which furnished for shipment much more live stock than Millgrove; that appellant had cars sufficient to transport all live stock ordinarily offered for transportation, but that at the time complained of there was an unusual demand for cars, and on that account appellant was not able to furnish appellees the cars they desired on the 30th of August, 1890, but that it did furnish them cars and transport their said stock as soon thereafter as it could furnish cars for that purpose, having due regard to the rights of other shippers who had demanded transportation at or before that time; that at said time all of appellant's cars that were suitable to transport said stock were in actual use on the road or had been furnished to parties at different stations along the line of said road in answer to their demands for cars to be used in shipping such stock, and it had no cars that could be taken to Millgrove for the transportation of said stock of the appellees; that cars for that purpose were furnished, and said stock was transported as soon thereafter as appellant could do so, having a due regard to the rights of other shippers and serving each in the order of their demands.

This answer presented a good defence, and it was available error to sustain the demurrer to it, unless, as contended

by the appellees, the facts alleged were available under the general denial. An answer of general denial controverts the material allegations of the complaint or the paragraph thereof to which the answer is addressed. If a fact constituting a defence would tend to negative a material allegation of the complaint, it need not be specially pleaded; otherwise it is new matter, and should be pleaded specially. An averment in the complaint which the plaintiff is not bound to prove is not a material allegation.

The statute (section 377, R. S. 1881), provides: "Under a mere denial of any allegation, no evidence shall be introduced which does not tend to negative what the party making the allegation is bound to prove."

If it be admitted that the allegation concerning the appellant's ability, in the first paragraph of the complaint, amounted to the converse of all that is alleged in the second paragraph of answer; yet as it was an averment which the plaintiff was not bound to prove, it was necessary for the appellant to plead specially the matter contained in this paragraph of answer.

The third paragraph of answer was addressed to so much of the second paragraph of complaint as charged the appellant with violation of its duty to the appellees by failure and neglect to transport their stock. Under the view just now expressed concerning the second paragraph, the third also was sufficient.

The fourth paragraph of answer was addressed to the second paragraph of complaint, and it alleged, in substance, that on the 28th of August, 1890, when the appellees allege they demanded cars of the appellant to transport live stock, they had no live stock to be transported, nor did they have until the 30th of August, 1890; that when they delivered said stock at Millgrove and asked for transportation the appellant had no cars at that point not in use that were suitable to transport such stock, nor had it any not in use at any other point from which it could bring them to Millgrove on

any of its trains earlier than the 1st of September, 1890, on which it did furnish cars and transport the stock.

The fifth paragraph was addressed to so much of the second paragraph of complaint as charged that the appellant "promised" to furnish the appellees cars on the 30th of August, 1890, to transport stock to East Liberty; and it was alleged that at the time said supposed promise was made the appellees did not own, nor did they have, said stock or any of it for shipment, and that said promise was without any consideration and was void.

If a shipper's order to a common carrier of live stock for a designated number of cars to be furnished at a station indicated on a day mentioned in the future for the transportation of such stock, be accepted by the carrier, such agreement would constitute a contract binding on the company to furnish the cars and upon the shipper to furnish the stock to load them. *Missouri, etc., R. R. Co.* v. *Texas, etc., R. R. Co.,* 31 Fed. Rep. 864.

The fact that the shipper did not own or have the stock when the contract was made could not affect the question as to the liability of the carrier for failure to provide the cars for the stock presented by the shipper pursuant to the contract. It has been held that where a shipper applies to an agent for cars to be furnished at a time mentioned and at a station named it is the duty of the company to inform the shipper within a reasonable time, if practicable, whether it is unable to furnish the cars; and if it fails to give such notice, and has induced the shipper to believe that cars will be in readiness, and he, relying on such conduct of the carrier, is present with his live stock at the time and place designated and finds no cars, the railroad company is liable for damages thereby sustained by him. *Ayres* v. *Chicago, etc., R. W. Co.,* 71 Wis. 372; 5 Am. St. R. 226.

The fourth and fifth paragraphs of answer were insufficient.

The judgment is reversed, and the cause is remanded with instruction to overrule the demurrer to the second and third paragraphs of answer.

Filed Sept. 29, 1892.