CHICAGO, R. I. & P. RY. CO. v. LOGAN, SNOW & CO.

No. 41.   Opinion Filed May 12, 1909

(105 Pac. 343.)

1.   **APPEAL AND ERROR—Harmless Error.** A motion to require the plaintiffs' petition to be made more definite and certain being overruled, it affirmatively appearing from the record that the defendant was not prejudiced thereby, the ruling of the lower court thereon will not be disturbed.

2.   **CARRIERS—Injuries to Freight—Act of God—Burden of Proof.** Whenever a carrier seeks to excuse itself for loss occurring on

account of an act of God, or some irresistible superhuman cause, the burden of proof rests upon the carrier.

3 SAME—Evidence. It appearing that the goods delivered to the plaintiff in error as a common carrier were placed in a sealed car and set upon a switch for transit and an unprecedented flood came in such intensity volume and so sudden and extraordinary as to constitute an irresistible superhuman cause no evidence being offered by the carrier as to the condition of the car after the flood the goods in question being not identified in the car after the flood the flood waters rising eight feet from the ground where said car was standing, the perishable goods contained in the cars caught in the flood being "dumped" in the Kaw or Kansas river, but the goods in controversy not being of that character, all of the goods identified being forwarded to their proper destination, those that could not be identified supposedly or probably being forwarded to the claim department in Chicago, the goods in controversy never reaching their proper destination, and no showing being made in regard to the same by the claim department at Chicago, held, that the verdict of the jury against the carrier will not be disturbed.

Dunn, J., dissenting.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County; C. F. Irwin, Judge.*

Action by Logan, Snow & Co., against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

On the 18th day of May, A. D. 1905, the defendants in error, as plaintiffs, commenced this action against the plaintiff in error, as defendant, in the district court of Kingfisher county, territory of Oklahoma, declaring in their petition on three alleged causes of action. In the first count it was alleged: That on the 27th day of May, 1903, the plaintiffs were the owners of certain goods, wares, and merchandise of the value of $323.03, and on said date delivered said goods, wares, and merchandise to the defendant as a public carrier at Kansas City, Mo., to transport and carry same from that point to Kingfisher, Okla. T.; that said defendant received and accepted said goods in good condition as a public carrier, and agreed and undertook for a valuable consideration to transport same to Kingfisher, and there deliver same to the plaintiffs; that said defendant, after receiving said goods, wares,

and merchandise for shipment, wholly failed, neglected, and refused to carry transport, and deliver same to the plaintiffs at Kingfisher, Okla. T., although frequently demanded so to do, and still so neglects, fails, and refuses to do so, and refuses to account for said goods in any manner, to the damage of the plaintiffs in the sum of $323.03. The second count is the same as the first, except that it alleges the date to be the 29th day of May, 1903, and the value of the goods or amount of damage to be $27.63. The third count is also the same as the first, except the allegation as to the date is May 26, 1903, instead of May 27th, and the value of the goods or damages is alleged to be $60.98.

On the 11th day of June, 1905, the defendant filed its motion to require plaintiffs to state in their several causes of action whether or not the alleged agreements between the plaintiffs and the defendant were in writing, and, if so, by what representative of the company they were executed, etc. On the 12th day of June, 1905, the defendant filed its demurrer to the petition of the plaintiffs, on the grounds: (1) Want of jurisdiction of the person of defendant or the subject-matter of the action; (2) want of capacity to sue; (3) another action pending between the same parties for the same cause; (4) defect of parties, plaintiff or defendant; (5) several causes of action improperly joined; (6) the petition did not state facts sufficient to constitute a cause of action. On the 2d day of December, 1905, the court separately overruled the motion of the defendant to require plaintiffs to make the petition more definite and certain, and the demurrer, to each of which exceptions were properly saved. On the 30th day of December, 1905, defendant filed its answer to the petition of the plaintiffs, denying each and every allegation therein except as admitted. Defendant admitted that it was a corporation as alleged, and a public carrier of freight between Kansas City, Mo., and Kingfisher, Okla. T., and that on the 27th day of May, 1903, the plaintiffs were the owners of certain goods; and states that said goods were by the plaintiffs shipped from Chicago, Ill., to King-

fisher, Okla. T., over the line of the Wabash Railway Company. under contract between the plaintiffs and said Wabash Railway Company, and that said goods were delivered by said Wabash Railway Company to the defendant at Kansas City, Mo., on said date, that on and immediately after said 27th day of May, 1903, a great and unprecedented flood, caused by the overflow of the Kaw or Kansas and the Missouri rivers occurred at said point, and by reason thereof the yards, tracks, and warehouses of said defendant at said point where the goods were delivered were suddenly and unexpectedly overflowed, and the defendant's property, including its building, warerooms, and cars, was caught in the flood and the goods so owned by the plaintiffs were in said way, without any fault on the part of the defendant lost and destroyed by being washed away and covered with earth, water, and wreckage, caused by said freshets in said rivers, that the defendant in good faith endeavored to remove said goods beyond the reach of said waters, but the rise of the same was so sudden, unexpectd, and unprecedented that it was unable to do so.

On the 16th day of January, 1906, plaintiffs filed their reply to said answer, denying each and every allegation contained therein inconsistent with their petition. On the same day the plaintiffs and the defendant, through their attorneys, stipulated that the value of the goods involved in said cause as sued by the plaintiffs was that fixed in the petition of the plaintiffs, that said goods were of the actual market value of $411.64 at the time same were alleged to have been received by the defendant, and in good condition. On the 8th day of July, 1907, the trial of said action was begun in the district court of Kingfisher county, Okla. T., and the question upon whom the burden or proof rested was raised. The court ruled that in view of the pleadings and admissions the burden was on the defendant, to which action of the court no exception was taken.

The evidence on the part of the defendant to sustain the averments of its answer is substantially as follows: George Chaplin, chief clerk of its local freight office at Kansas City, Mo., testified

that the records of the company showed that they received the shipment on May 29th, and that it was loaded on the same day on one of the regular merchandise cars for the west, but that, on account of flood conditions west, no cars on that day ran west on defendant's line. In answer to interrogatories, he testified:

"Q. After the flood you may state whether or not the goods in question were ever found or identified? A. No. we were never able to identify them. Q. Was the car in which these goods were loaded submerged with water? A. It was to a depth of 8 feet (from the ground). Q. Now, when you came to getting the actual goods of Logan, Snow & Co., state whether or not you were able to identify them? A. Our records show that they were loaded in that particular car. Q. Can you testify from your recollection? A. Yes, sir; I can. We were unable to identify these goods, our records show it. Q. What finally became of these goods, if you know? A. I can't say. All the unidentified goods were sent to Chicago. Q. Sent to Chicago? A. But they were in such a shape that they were not worth the freight charges all that I saw."

He further testified that on the night of the 29th day of May the goods were put in the box car in question and the car was sealed up.

"Q. State whether or not, after going into the cars and taking out the freight, it was possible to identify all the freight in the cars? A. It was not possible to identify all the freight in the cars. Q. State whether or not it was possible to identify all, or even to find all of the freight that your books showed should be in the cars? A. It was not possible to identify the freight, and there was a great deal of the freight that we couldn't find at the time the cars were unloaded."

Mr. Peterson, the general warehouse foreman of the defendant at Kansas City, testified as follows:

"Q. Do you remember this shipment of goods of Logan, Snow & Co., of Kingfisher, Okla., these goods in question? A. I know by the handling of all records and correspondence about it and endeavoring to locate the shipment. Q. Do you know whether or not you were ever able to identify this particular shipment after the flood subsided? A. We were not. Q. Did you find these goods that are in controversy here when you got in there to checking up? A. No, sir. Q. What became of the goods generally that

came out from that flood; what did you do with them? A. A great many of the goods were worthless, such as crackers. Stuff of that kind were thrown away. Goods that were plainly marked we took up with the consignee and shippers. In most cases got disposition on them. The goods that were badly damaged and we were unable to identify were supposed to be sent to Chicago. Q. You never got disposition on this shipment of plaintiff's here? A. We got disposition, but we never located the goods. Q. You don't know what became of the goods? A. No, sir; I do not. Q. Do you know what day the goods of Logan, Snow & Co. were received by the Chicago, Rock Island & Pacific Railway Company, and, if so, what day? A. On May 28th. Q. Did you ever make any effort to identify these goods? A. I did. Q. Were you successful? A. No. Q. Now, what became of the goods that was in that car that was loaded on the 29th day of May, 1903 (referring to the car in which the goods in question were placed)? A. A great many of them were sent to the destination; some of them damaged to such an extent that they were dumped; and those that we were unable to identify probably went to Chicago. Q. That was the final disposition of all the goods that was in the cars at that time? A. Yes, sir. Q. Now, you speak about them being dumped. What do you mean by that? A. Such goods as crackers, or goods that would not stand it to pass through the flood, were put in what we called a dump car and sent over to the river and dumped in. Q. O, I see, perishable goods? A. Yes, sir. Q. These goods that you mentioned, to Logan, Snow & Co., were not goods of that character, were they? A. No., sir. Q. And you don't know anything about what condition these goods were in after the flood, personally? A. This particular shipment, no. Q. I believe you say there were some other goods in the car that was loaded on the 29th day of May, 1903, which contained two cases of dry goods and a case of corsets consigned to Logan, Snow & Co., mentioned in this suit? A. Yes, sir. Q. Mr. Peterson, have you any returns from the property that was shipped to Chicago for final distribution? A. No, sir; that was handled by the claim department in Chicago. Q. Handled by the claim department in Chicago? A. Yes, sir."

On June 8, 1903, the following notice was sent to the defendant in error at Kingfisher, Oklahoma Territory, by the agent of the plaintiff in error:

"Please be advised that we have the following goods on hand

at our Kansas City depot, consigned to you, viz: shipped from ————. This freight has been badly damaged by the recent flood and must be removed at once. Otherwise it will be sold for whom it may concern.

"(Signed)      J. F. GILLETT. Agent."

Attached to said notice was a description of the goods sued for in this cause, but there is no notation as to wherein the same were damaged.

On July 13, 1903, the following letter was sent to the defendants in error:

"Messrs. Logan & Snow,

"Kingfisher, O. T.

"Gentlemen: Referring to your letter of June 16 and 20, in reference to two cases of dry goods shipped by Marshall Field & Co. to you, would say that we cannot forward these goods to you under the proposition outlined, in your letter, as this company is not assuming any responsibility account of these goods being damaged by water, and we do not care to forward them down there and have them refused on our hands. Acting under instructions from our claim department, we shall return these goods to Chicago to be disposed of at that point.

"Yours truly,
"(Signed)      J. F. GILLETT."

This letter was written on a Chicago, Rock Island & Pacific Railway Co. letter head. No effort was made by the plaintiff in error to introduce the testimony of the agent, Gillett, relative to said notice of June 8, or said letter of July 13. By other witnesses, however, it was sought to be shown that such notices as the one of June 8 were sent to all persons shown by their records to have had freight in transit in their yards at the time of the flood, and that letters of the character of that of July 13 were written without making specific examination, but on the general character of the flood.

*C. O. Blake, H. B. Lowe, M. A. Lowe,* and *Robberts & Curran,* for plaintiff in error. No copies of briefs of plaintiff in error reached the reporter.

*Noffsinger & Hinch,* for defendant in error.—On the burden

of proof resting upon carrier pleading act of God to evade liability for loss of goods: *Charlotte, C. & A. R. Co. v. Wooten et al.,* 87 Ga. 203; *Van Winkle v. South Car. Ry. Co.,* 38 Ga. 32; *McCoy v. K. & D. M. Ry. Co.,* 44 Iowa, 424; *Alden v. Pearson,* 69 Mass. 342; *Wolf v. Am. Ex. Co.,* 43 Mo. 421; *Baltimore & O. Ry. Co. v. Morehead,* 5 W. Va. 293; *St. L., I. M. & S. R. Co. v. Lesser,* 46 Ark. 236; 2 Enc. Ev. 883-4, and cases cited.

WILLIAMS, J. (after stating the facts as above). At the beginning of the trial the question was raised upon whom the burden rested in the trial of said cause, and it appeared that it had been stipulated and agreed between the parties thereto that the value of the goods involved in the action was as alleged in the petition, whereupon the court said: "My judgment is the burden is on the defendant to establish that they were lost in the flood. They plead it was an act of God." No objection or exception was taken to this ruling of the court, and that amounts, in view of the recitals of the answer, to an admission by the plaintiff in error that said goods were received by it, and that they were of the value as alleged. Under that status the plaintiff in error could not be prejudiced by the plaintiff's petition not being more certain in the respect complained of, and, if there was any error committed by the court in overruling said motion, it was without injury, and not a reversible one.

The burden being on the defendant to make out its defense under the issues joined, it will be observed that after the flood subsided the goods in question were never identified. They were not of the character of perishable goods which were "dumped." On the part of the defendant, the witness states that the goods that were badly damaged, and not capable of being identified, were *supposed* to be, or were *probably,* sent to the claim department at Chicago. Another witness says that the unidentified goods were sent to Chicago, but that all that he saw were not worth the freight charges, showing that he was testifying in part as to hearsay and not of his own knowledge. Nor is there any effort to show by any witnesses from the claim department that the un-

identified goods from said car were sent to Chicago, or what the condition of the same was—whether the damage was partial or complete, or whether they were not damaged, but incapable of being identified. The unidentified or damaged goods sent to Chicago were doubtless inventoried by the plaintiff in error, and, if so, it could have easily shown whether or not the damage was partial or complete; and, if not damaged, but no means of identification, it could have been shown. All this was peculiarly within the duty and power of the carrier. Whenever a carrier claims that the loss occurred on account of a flood, so extensive as to come within the exception of an act of God, or irresistible superhuman cause, and therefore excusing the carrier, the burden of proving this fact rests upon him. Hutchinson on Carriers (3d Ed.) sec. 287, p. 340, and authorities cited in footnote 43; Moore on Carriers, 1906, § 3, p. 301; Ray on Negligence or Imposed Duties, Common Carriers, §§ 2, 10; *Montgomery & West Point R. Co. v. Moore,* 51 Ala. 396; *Jackson et al. v. Sacramento Valley R. Co.,* 23 Cal. 272; *Richmond & Danville R. Co. v. White & Co.,* 88 Ga. 807, 15 S. E. 802; *Cownie Glove Co. v. Merchants' Dispatch Trans. Co.,* 130 Iowa, 328, 106 N. W. 749, 4 L. R. A. (N. S.) 1060, 114 Am. St. Rep. 419; *Micheals et al. v. New York Cent. R. Co.,* 30 N. Y. 564, 86 Am. Dec. 415; section 718, Wilson's Rev. & Ann. St. Okla. 1903. Nor was there any evidence on the part of the defendant to show what condition the car was in after the flood, as to whether the seal was broken, or where located with reference to the freighthouse, or whether any of the merchandise placed therein immediately prior to the flood was missing from said car, and what the appearance of the same was immediately before and after the flood had subsided. It appears that where the car was standing the flood waters rose eight feet from the ground. The employes of the defendant that loaded this car may have had some knowledge as to where the goods of the character herein involved were located in said car. The fact that the testimony of such employes was not offered, and no more evidence was forthcoming from the defendant, upon whom rested the burden, and also to whom alone, if to any one, the evidence

was accessible, may have caused the jury to conclude that the defendant had not discharged the burden resting upon it to explain what became of the goods, and to show by proof that the same were lost on account of the flood.

In the case of *Charlotte, C. & A. R. Co. v. Wooten et al.*, 87 Ga. 203, 13 S. E. 509, the court said:

"The question is whether the goods lost by the carrier and never delivered should be paid for as sound or as damaged goods. If they were damaged, it was by a freshet, and without fault of the carrier. The goods not lost or stolen were damaged; but there is no direct evidence that those which disappeared were damaged, or, if so, to what extent. So far as appears, they were never seen during or after the freshet, and, consequently, to say that they were damaged when the carrier lost possession of them would be a mere conjecture. They might or might not have been stolen during the confusion in business occasioned by the freshet, and when stolen they may or may not have been damaged. It seems that the burden of proof on this subject must necessarily rest upon the carrier. It had the custody of the property, and that custody has been lost. Exactly when does not appear. We can discover no reason for holding that, under the evidence, the jury made any mistake in finding the value of the goods as proved, irrespective of the mere chance that their value may have been impaired before they were lost."

In the case of *St. Louis & S. F. R. Co. v. Jamieson*, 20 Okla. 662, 95 Pac. 420, this court held:

"Where the evidence in a case leaves it doubtful whether the particular carrier who is sued for the loss of goods, or another from whom that carrier received the same, is liable, the Supreme Court will not disturb the finding of the jury. *Illinois Central Railroad Co. v. Cowles*, 32 Ill. 117."

This holding was made unquestionably for the reason that it was peculiarly within the power of the carrier to show on the line of what particular carrier the liability for loss or damage arose, and, failing to discharge its burden of proof, except to the extent to leave it doubtful as to the particular carrier causing the loss, this court would not disturb the finding of the jury. The same rule would apply to a carrier in trying to discharge itself by showing that there was a loss through an act of God.

If it discharges the burden only to the extent of leaving it doubtful as to whether the loss was by the flood or through some other means, or that merely the consignment address upon the boxes had become unintelligible, and that the goods supposedly or probably had been sent to the claim department at Chicago, and no showing made from that department with reference thereto, the finding of the jury against such carrier, under such circumstances, on review in this court, should not be disturbed.

In this case it is to be assumed that the issues joined were submitted to the jury under proper instructions. The jury found the same against the defendant, and, in view of the testimony, we do not feel that we would be justified in holding that as a matter of law the jury erred in its findings.

The judgment of the lower court is affirmed.

Kane, C. J., and Hayes and Turner, JJ., concur.

Dunn, J. (dissenting). In the conclusion reached by the court holding that the evidence in this case fails to establish the destruction of the goods by the flood, I am unable to concur. The evidence on this proposition is entirely from the defendant, and its agents and servants. It is undenied, is reasonable, fully corroborative of itself, and there is nothing to detract in any particular from its full probative force. To my mind it conclusively shows that the goods in question were received by the company and promptly placed in a sealed car; that the flood submerged the ground where this car stood to a depth of eight feet; that, when the car was opened, the marks on the packages within which these goods were contained were so obliterated as a result of the flood that they could not be distinguished. To show the muddy character of the water and its effects on property with which it came in contact, witness Chaplin, from whose testimony the majority opinion quotes, further testified, in answer to interrogatories, as follows:

"Q. After the water subsided, how did it leave the freighthouse of the Chicago, Rock Island & Pacific Railway Company and in the cars that were standing in the yards adjacent thereto? A. On the freight in the freighthouse it left a deposit of mud from

one to three feet deep. The goods that were capable of being damaged by mud and water were practically ruined. In a lot of cases I noticed they were broken open, and the goods were simply a mass of mud. Q. State what effect the water had on the goods themselves and the marks with reference to the identification after the flood. A. The water seemed to have erased all the marks, or it did in a great number of cases erase all marks, and when we unloaded goods we had a gang of men scrubbing off the boxes and trying to find the marks. The majority of the freight we couldn't find the marks on. We washed them off the best we could."

The matters submitted in this case for the determination of the court, it occurs to my mind, should be decided upon a reasonable, common-sense basis. The petition shows that the goods which were contained in this shipment were made up of $285.72 worth of fancy ribbons, $34.06 worth of fancy dry goods and notions, $60.98 worth of glove-fitting corsets, and $27.63 worth of black hats and caps. The testimony is that goods that were plainly marked were taken up with the consignee, and in most cases disposition was made of them. Those which were entirely worthless, such as crackers, etc., were dumped in the river, and goods such as were in this shipment, which the parties were unable to identify, probably went to Chicago, and the same witness further testified that all the unidentified goods were sent to Chicago and all that he saw were in such a shape that they were not worth the freight charges. It seems to me that it is a matter of simple common sense when we consider the character of these shipments, the class of goods which made them up, that, when packages in which they were contained were soaked by the waters of this flood to such an extent as to entirely obliterate the marks, it would result in the total destruction of the marketable value of the goods. Of what value could hats and caps, fancy ribbons, and glove-fitting corsets be, after being submerged for a week or ten days in the muddy waters making up that flood? This testimony being undisputed, being reasonable, and fully corroborated, to my mind establishes beyond cavil or question that these goods were, as contended by de-

fendant, destroyed in a manner under which it was relieved of responsibilty.

The suggestion that there is no evidence showing the condition of the car after the flood as to whether the seal was broken or as to whether any merchandise placed therein was missing from the car, and suggesting this as a basis for liability, involves a journey into the realm of mere conjecture and guess, which to my mind is not justified by the claims of the parties or within the issues. To hold that a party in whose hands goods are placed which are then involved in a flood of the magnitude of this, being clearly an .act of God, is liable for their value when he does not produce, fully identify, or more fully account for them than is here done after the occurrence is over, is virtually to lay down the rule that the greater the flood or catastrophe, and the more completely the property is destroyed, and the party's physical evidence annihilated, the more certain he is to be held liable.

Necessarily, disputed questions of fact are to be decided by a jury, and not by any appellate tribunal; but to my mind there is no room for dispute or difference on what the evidence in this case proves. The agents of the defendant, after the flood, were unable to find these goods and identify them; that is, select them out from the other submerged goods contained in the car with them. The conditions which brought this about for all practical purposes totally destroyed the goods. If, however, there was left a *modicum* of value therein, for this only should the defendant be held liable, and not for the full value.