## ARMSTRONG, BYRD & CO. v. ILLINOIS CENT. R. CO.

No. 396. Opinion Filed May 10, 1910.

(109 Pac. 216.)

1. CARRIERS—Carriage of Goods—Action for Loss—Prima Facie Case. In an action against a carrier by a shipper for loss or damage to a car of organs, said shipment having been delivered to the carrier in good condition, and by it to the consignee in a damaged state, this makes prima facie case against the carrier.

2. CARRIERS—Carriage of Goods—Damage—Prima Facie Defense —Shifting of Burden of Proof. In an action by a shipper against a carrier to recover on a shipment consisting of a car of organs damaged by a flood, when the organs were in a car on a side track in defendant's yard,, such car in due course of business having been received at that point on June 4th, and on June 5th, with 74 other cars, tendered to the connecting carrier, 40 of said cars being accepted, and this car, with the balance, being declined on the ground that it was unable, on account of the flood, to handle all the business tendered it; also on June 6th and 7th, it with other cars being tendered to such connecting carrier, and likewise refused, it was then removed to the side track in the yards where the damage occurred, the same being as reasonable a place of safety as was available at that time, the damage being admittedly occasioned by an act of God, this constituted a prima facie defense.

(a) The carrier, by proving the damage was due entirely to the flood or act of God, overcomes such prima facie case, and the burden shifts to the shipper, then, to show that negligence on the part of the carrier co-operated with the act of God in bringing about the damage to the shipment,· in order to recover.

3. CARRIERS—Carriage of Goods—Damage—Negligence—Evidence. The car of organs having been received on the morning of June 4th in regular course of business, and with 74 others, in due course of business, being tendered to the connecting carrier on June 5th, only 40 of which were accepted, the others being de- clined on account of the inability of such connecting carrier to

handle same, that of itself, without more, is not sufficient to show negligence contributing to the loss.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; George W. Clark, Judge.*

Action by Armstrong, Byrd & Co. against the Illinois Central Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

*Harris & Wilson,* for plaintiff in error.

*R. M. Campbell,* for defendant in error.—Citing *Grier v. Merchants', etc., Co.,* 108 Mo. App. 565, and *Amer. Brewing Co. v. Talbot* (Mo.) 42 S. W. 679.

WILLIAMS, J. That the defendant in error received the car of organs, consigned to an Oklahoma point, which were damaged about June 10, 1903, on account of the inundation of the east bottom of the Mississippi river opposite the city of St. Louis, resulting in the destruction of much property, and afterwards in such damaged condition reached the consignee is not controverted. That said flood was so extensive as to comprise a superhuman agency is not disputed. It is claimed, however, that on account of the proximate negligence of the carrier it should not be excused from answering for the damages sustained. The facts in this case are practically the same as those in *Grier et al. v. St. Louis Merchants' Bridge Terminal Railway Co.,* 108 Mo. App. 565, 84 S. W. 158. That action arose out of the same flood.

The car of organs reached East St. Louis over the defendant's line, which terminated at that point, on the morning of June 4, 1903. It was handled in the usual manner, and on June 5th, with 74 other cars, in due course of business, tendered to the Terminal Railway Association, its connecting carrier, which accepted 48 of them, and refused the others, including the one in question, stating that it was unable to handle all of the business on account of the flood. On the next day (June 6th) it, with 164 cars, was

again tendered to the Terminal Railway Association, and was again refused on account of its tracks being under water, and not being able to handle it. On June 7th, it, with 219 other cars, was offered, but it was impossible to either exchange traffic or work construction trains on account of water having flooded the tracks of said association, etc. Thereupon, the car was taken to defendant's yards where the other cars were taken for protection from the high water, and levees were also erected by the use of dirt and sacks of sand to protect such yards. The uncontradicted evidence shows that such yards were safe and secure against any ordinary flood, or any flood which could reasonably be expected, and that the car in question among others in the possession of the defendant, on account of the congestion of the traffic resulting from the flood, could not be moved from East St. Louis to any safer place. On June 5th, the water beginning to rise rapidly in the Mississippi bottom, and that portion of the city where the tracks of the Illinois Central Railroad Company lay appearing to be dangerous as well as all other portions of East St. Louis, it being protected mainly by the embankments of the railroads leading into the city, the mayor of said city called a meeting of the officials of the various railroads for the purpose of taking concerted and immediate action toward saving the city from being inundated, and the request was made of all railroads to render all the aid and assistance they could, by furnishing to said municipal authorities their engines, cars and dirt, as well as all the men they could, for the purpose of bringing dirt into the city to raise the embankments and make temporary levees to keep the water out of the city. The defendant company complying with this request, as a result during such time, it could not bring any freight or passenger trains in or carry any out of said city over its tracks. Those trains only hauling dirt for embankments to protect the city were permitted by the municipal authorities to be operated. On June 5th, 1903, the mayor forbade the defendant from running any trains into or out of the city except for such purposes, this order remaining in force until June 15th. On the 9th or 10th of

June, a washout occurring on the Illinois Central Railroad embankment in the southeast part of the city, after that date, it was unable to get trains of any kind or character into the city or resume operation until about the 15th of June, 1903. This flood was the most extraordinary since the year 1844.

If the conclusion reached in *Grier et al. v. Merchants' Bridge Terminal Co., supra,* is correct, the judgment rendered in favor of the defendant in error by the trial court should be affirmed. We are referred to the case of *A., T. & S. F. R. Co. v. Madden, Sykes & Co.,* 46 Tex. Civ. App. 597, 103 S. W. 1193, as being contrary thereto. In that case, the co-operating negligence consisted in the improper location of the carrier's yards without providing reasonable protection in the light of previous inundations. It is not in point for the reason that the car of organs was on June 7th set out in the yard at a reasonable place of safety when it was ascertained that it was not reasonably practicable to get the car out of the bottom.

Our attention is also called to the case of *Michaels v. N. Y. Cent. R. Co.,* 30 N. Y. 575, 86 Am. Dec. 415, in which the shipment, consisting of boxes containing dry goods, was received by the carrier at Albany to be transported to Rochester, 12 days later being delivered to the consignee in a damaged condition. When the shipment was received at Albany, instead of prompt transportation, same was held for back charges and placed in a warehouse, close to the river's (Hudson) edge, and not out of reasonable reach of rising water. Three days after being placed therein, "one of those freshets not uncommon in the upper sources and tributaries of the Hudson, and at Albany occurred." The defendant took no reasonable steps to protect the boxes and their contents against the probable effects of the river's rise after it began. It could, with the exercise of reasonable care, have prevented the damage. The carrier in that case was properly held not excusable from liability. Here, the inundation was appalling. Not only was the property of the carrier in great danger, but the lives of the inhabitants of a city of great population were in peril after June

5th, the loss or damage being, without controversy, occasioned by this flood. This was a complete defense against the plaintiff's *prima facie* case that the car of organs was delivered to the defendant in good condition and received by the connecting carrier from it in a damaged condition. When the loss occurs from such a cause that the law will not presume negligence or where it happens by an act of God, the burden of proving negligence and that it contributed to the loss, by the weight of authority, is upon the plaintiff. Hutchinson on Carriers (3d Ed. 1906) vol. 1, § 449, p. 480, and authorities cited in footnote 23; *Id.* vol. 3, § 1355, pp. 1604, 1605 1607, and authorities cited in footnotes. See, also, *Grier et al. v. St. Louis Merchants' Bridge Terminal Railway Co., supra.* Unless such negligence appeared by the defendant's evidence in showing the damage to be the result of an act of God, the burden shifted to the plaintiffs, and it was incumbent upon them to show that defendant was guilty of negligence that contributed to the loss or damage, and that, but for such negligence, the loss could have, with the exercise of reasonable care, been avoided. This burden it failed to sustain. The record in this case discloses that the defendant did everything within reason to protect not only this car of organs, but all other property in its custody. Its duty was to all shippers alike. The car was handled in due course of business, and, within one day after its receipt, tendered to the connecting carrier. There is nothing to show that it could have been tendered earlier. And, if so, that it would have been accepted, only about half of the cars tendered on June 5th being received. Nor does it appear that defendant had reason to believe that the connecting carrier could or would not receive said car after June 4th. On the contrary, same was tendered to it on each of the three succeeding days. Then realizing that the connecting carrier could not handle it, it took same to the safest place available for detention, it not being reasonably practicable to get this car out of the bottom after June 4th until June 17th. See, also, *C., R. I. & P. Ry. Co. v. Logan, Snow & Co.,* 23 Okla. 707, 105 Pac. 343; *Am. Brewing Ass'n v. Talbot,*

141 Mo. 674, 42 S. W. 679, 64 Am. St. Rep. 538; *Bibb Broom Corn Co. v. A., T. & S. F. Ry. Co.*, 94 Minn. 269, 102 N. W. 709, 69 L. R. A. 509, 110 Am. St. Rep. 361.

The judgment of the lower court is affirmed.

All the Justices concur.