## ST. LOUIS & S. F. R. CO. v. WALKER.

No. 2336.     Opinion Filed July 8, 1913.

(133 Pac. 185.)

1. **CARRIERS—Contract to Furnish Cars—Estoppel.** Where a shipper ordered cars from the agent of a railroad company to be used for shipping cattle on a day named by him, and the agent promised to order the cars and did not suggest to the shipper that the cars might not be obtained, the company is estopped to deny that there was a contract to furnish the cars on the day named.

2. **SAME—Contract with Shipper—Release of Liability—Validity.** Where a shipper made a written offer of shipment at the time a written contract of shipment was entered into, in which cattle offered for shipment were valued and which stated, among other things, the "valuation is named by me for the purpose of securing a reduced rate of freight on the shipment," and which offer was accepted in writing as follows: "the * * * Company accepts this shipment and the above valuation as a basis for fixing the rate of freight thereon"—a paragraph in the contract as follows: "For the consideration aforesaid the shipper agrees to waive and release, and does hereby release the company from any and all liability for or on account of delay in shipping said stock after the delivery thereof to its agent, and from any delay in receiving the same after tender of delivery, and for breach of any alleged contract to furnish cars at any particular time, and the shipper hereby releases and does waive and bar any and all causes of action for any damages whatsoever that have accrued to the shipper by any written or verbal contract prior to the execution hereof concerning said stock or any of them"—and was without consideration and is invalid where there is no evidence that the shipper obtained a lower rate than he would have received on the same valuation had no damage accrued prior to the execution of the written contract.

3. **SAME—Shipment of Live Stock—Claim for Damages—Evidence.** Where the evidence showed that plaintiff instructed a commission company to make claim for damages for injury to live stock occasioned by delay in shipment, and a letter from the claim agent of the railroad company to the commission company, written some weeks after the shipment was made, showing that the claim was made and that he had investigated it, and said nothing about the claim having been filed too late, and no proof was offered by the company showing or tending to show that it was not filed in time, the presumption that it was

filed within the time prescribed by the contract is a condition precedent to recovery.

4. **SAME—Liability for Delay.** A common carrier is not responsible for delay in the shipment of live stock where the delay is occasioned by the act of God and there has been no negligence by the carrier.

(Syllabus by Rosser, C.)

*Error from County Court, Garfield County; .*
*James B. Cullison, Judge.*

Action by W. H. Walker against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed upon condition.

*W. F. Evans, R. A. Kleinschmidt,* and *J. H. Grant,* for plaintiff in error.

Opinion by ROSSER, C. W. H. Walker, hereinafter called plaintiff, brought this action against the St. Louis & San Francisco Railroad Company, hereinafter called defendant, to recover damages for injuries to certain cattle shipped by the plaintiff over the defendant's road. The petition contained four different counts stating four different causes of action.

As to the first cause of action it is alleged that the plaintiff entered into an oral contract with the defendant on the 16th day of October, 1906, to furnish cars for the shipment of 62 head of cattle from Covington to Kansas City, to be furnished on the 21st day of October, 1906; that the plaintiff delivered his cattle at the stock yards at Covington on the 21st; that the defendant failed and neglected to furnish cars until the 24th day of October, 1906; and that the plaintiff was unable to get the cattle on the market at Kansas City until the 25th day of October. It also alleged a certain loss in market, shrinkage in the cattle, and other expenses.

For the second cause of action plaintiff alleged that on the 20th day of October, 1907, he shipped two cars of cattle, containing 70 head, from Covington to Kansas City; that the

stock was loaded in time to have reached the Kansas City stock yards for the market on the 21st day of October, but on account of the delay and failure to transport promptly the cattle did not arrive at the stock yards until October 22d. He also alleges a shrinkage in the weight of the cattle and a decline in the market from the 21st to the 22d.

For the third cause of action plaintiff alleged that on the 25th day of October, 1908, he delivered to the defendant at its station at Covington two cars of cattle, 59 in number, for shipment to Kansas City; that they were loaded at 7:30 a. m. on the 25th of October; that they reached Avard Junction at 5:50 p. m. of that date, and were held there and later backed to the station at Sapulpa, arriving there at 3 o'clock on the morning of October 26th; that they were not unloaded until 7 o'clock on the morning of the 26th; that they were held in the yards at Sapulpa until 8 o'clock p. m. on the 28th of October; and that they reached the stock yards at Kansas City at 7 o'clock on the morning of October 30th.

The fourth cause of action was for a later shipment, but the court instructed the jury that the plaintiff was not entitled to recover on the fourth cause of action, and that portion of the case is not before this court.

The defendant denied the principal allegations as to the first alleged cause of action and answered that it furnished the cars to plaintiff within a reasonable time after demand was made, and as soon as it was possible to secure the car, and that after the car was secured the cattle were promptly transported.

For its answer to the second cause of action it denied that it agreed or undertook to transport the cattle within a specified time. It further pleaded that it transported the cattle under the terms of a written contract, the eleventh paragraph of which provided that, as a condition precedent to the recovery of damages for the delay, loss, or injury to the live stock, the plaintiff should give notice in writing of its claim to some gen-

eral officer or agent of the defendant at destination within one day after the delivery of such stock at destination.

To the third cause of action defendant answered that it received two cars of cattle on the 25th day of October, consigned to Kansas City, and transported them by virtue of a written contract, the fourth paragraph of which provided that the live stock was not to be transported within any specified time, and that neither the company nor any connecting line should be responsible for delay caused by storm, failure of machinery or cars, or from obstructions on the track, and that the defendant should not be liable for any delay in the carriage of the live stock. It further alleged that on the 25th day of October, and about the time the shipment was received and started on its way, by reason of an unusual and extraordinary flood, the Verdigris river bridge on its line was washed out, rendering its tracks impassable, and that said delay was caused by the flood and was an act of God, for which it could not be held responsible.

Defendant urges that the first cause of action cannot be maintained for two reasons: First. It contends that the evidence does not show that it entered into a contract with the plaintiff to furnish cars on the 21st of October, 1906. It is true that the plaintiff states that he received no assurance from the agent that the cars would be there on the 20th. His statement was that he went to the agent and asked him to get the cars for the 20th, and that the agent told him that he would order them for the 20th. The agent did not express any doubt as to whether or not they would be there at that time, but merely told him that he would order the cars. The natural presumption would be that he would get the cars when he ordered them. He knew that the plaintiff expected to ship at that time, and when he, in response to a request to furnish them, stated he would order them for that time, without making any suggestion that they might not be there, it amounted to an agreement that the cars would be there at that time. It is estopped by the conduct of its agent from

denying that it made a contract. Knowing that the plaintiff was relying upon its having the cars at the time they were ordered, it was defendant's duty to inform him that they were not to be had; it is liable for the damages for failure to transport promptly. *Pittsburg Railroad Co. v. Racer,* 5 Ind. App. 209, 31 N. E. 853; *Ayers v. Chicago & N. W. R. Co.,* 71 Wis. 372, 37 N. W. 432, 5 Am. St. Rep. 226.

Defendant's second contention is that by the seventh paragraph of the bill of lading the plaintiff released whatever cause of action he may have had against the defendant for failure to furnish cars at the time agreed upon. The seventh paragraph is as follows:

"For the consideration aforesaid the shipper agrees to waive and release, and does hereby, release, the company from any and all liability for or on account of delay in shipping said stock after the delivery thereof to its agent, and from any delay to receiving the same after tender or delivery, and for breach of any alleged contract to furnish cars at any particular time, and the shipper hereby releases and does waive and bar any and all causes of action for any damage whatsoever that has accrued to the shipper by any written or verbal contract prior to the execution hereof concerning said stock, or any of them."

The terms of the paragraph are broad enough to cover the damage claimed by the plaintiff in this case, but the release is ineffective because it was made without consideration. The contract was on a printed form of contract, exactly the same as was used by the company upon any other shipments referred to in the other causes of action. This is not evidence that the plaintiff obtained a lower rate by reason of the release of accrued damages than he would have obtained by the same valuation if no damages had already accrued. So far as the evidence shows, the company would have charged the same rate exactly whether there had been any previous damages or not. The only consideration for the reduced rates was an agreement to release the company from a risk upon the cattle above a certain valuation. This clearly appears

from the application or offer of shipment made by the plaintiff at the time the contract and bill of lading was issued. This application is as follows:

"To the St. Louis & San Francisco Railroad Company: The undersigned offers for shipment over your road 62 head of cattle from Covington, O. T., to Kansas City, Mo., each head of the estimated weight of 1,000 pounds, and valued at thirty dollars per head, * * * which valuation is named by me for the purpose of securing a reduced rate of freight on the shipment; and I agree that in case of loss or damage to same said valuation so named shall be conclusive, should I name any claim for such loss or damage against any carrier over whose line the same may pass. This application is an election on my part to avail myself of a reduced rate by making this shipment under the following contract, limiting the liability of such carrier, instead of shipping the same at a higher rate without such limitations. W. H. Walker, Owner or Shipper. Witness O. G. Sage.

"The St. Louis & San Fransisco Railroad Company accepts this shipment and the above valuation as a basis for fixing the rate of freight thereon. St. Louis & San Francisco Railroad Company, by J. E. Bernard, Agent."

The exact point is decided in *Clark v. Ulster & Delaware R. Co.,* 189 N. Y. 93, 81 N. E. 766, 13 L. R. A. (N. S.) 164, 121 Am. St. Rep. 848, 12 Ann. Cas. 883. The first paragraph of the syllabus is as follows:

"An oral contract whereby a railroad company undertakes, through a station agent, to furnish cars for a shipment of live stock at a specified station and at a specified time is not void by written contract, signed by the shipper, for the transportation of live stock, subsequent to a breach of the oral contract unless there is some consideration moving the shipper as compensation for damages incurred by him in consequence of the breach of the oral contract."

It is true that the court in that case said that a written contract signed related only to matters *in futuro;* but while that was referred to the decision was not rested upon that ground, but was rested upon the fact that there was no consideration for the release of the damages already accrued. The

same question is decided in *Gulf, etc., R. Co. v. House,* 40 Tex. Civ. App. 105, 88 S. W. 1110.

As grounds of reversal as to the second cause of action, the defendant contends that the eleventh paragraph of the contract of shipment, which provided that, as a condition precedent to recovery for any damage for delay, loss, or injury, plaintiff must give notice in writing of the claim to some general officer or the nearest station agent of the defendant before the stock was removed from the point of shipment or from the place of destination, and before it was mingled with other stock, and that the written notice must be served within one day after delivery of the stock at destination, and which provided that the failure to comply with that provision of the contract should be a bar to a recovery of such damages.

This cause of action arose prior to statehood, and at that time it was necessary, in order to entitle plaintiff to recover, that he should have given notice. The plaintiff offered no direct proof that notice was served. He testified, however, that his commission company was instructed to file a claim, and he offered in evidence a letter signed by the freight claim agent of the defendant, dated February 12, 1908, addressed to his commission company, from which it appears that the claim had been made by the commission company, and in which nothing was said about a failure to file the claim within time. On the other hand, the letter admitted that the defendant was responsible for missing one market, and stated that five cents a hundred would cover any actual difference in the market. From this letter, written a few weeks after the shipment, and which showed that it had been preceded by an investigation upon the part of the freight claim agent, and in which nothing was said about the failure to file the claim within time, the presumption is that the claim had been made at the proper time and in the proper way, especially as the defendant offered no proof as to when the claim was filed.

Defendant contends that plaintiff is not entitled to recover upon the third cause of action, because the delay was

occasioned by the act of God and through no fault of the defendant. This contention must be sustained. The evidence shows that the shipment upon which the third cause of action is based was made at a time when there had been a great deal of rain and when the plaintiff himself knew that the tracks were in bad condition. About the time the stock was shipped, bridges across the defendant's road were washed away, one across Caney creek and another across Verdigris river, and it was on account of this condition that the defendant was unable to transport the cattle within a reasonable time and with the usual dispatch. There is no evidence of negligence on the part of the company which, concurring with the freshets, caused the injury. The company is not responsible for damages caused by an act of God. *Armstrong, etc., Co. v. Illinois Central R. Co.*, 26 Okla. 352, 109 Pac. 216, 29 L. R. A. (N. S.) 671, and cases there cited; *C., R. I. & P. R. Co. v. Logan, Snow & Co.*, 23 Okla. 707, 105 Pac. 343, 29 L. R. A. (N. S.) 663.

It follows that plaintiff was not entitled to recover upon the third cause of action, and that so much of the judgment as allows a recovery upon that cause is erroneous. The verdict of the jury was for separate amounts upon each cause of action but the judgment was for the entire amount. The verdict for the third cause was $200.

If the plaintiff will within 40 days enter a *remittitur* for that amount, the judgment should be affirmed; otherwise it should be reversed and remanded.

By the Court: It is so ordered.